José C. MORALES PÉREZ, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE SAN GERMÁN, recurrido.

No. 642.—*Sometido:* Mayo 28, 1926. *Resuelto:* Julio 29, 1926.

TESTAMENTOS—REQUISITOS Y VALIDEZ—DE LA FORMA Y CONTENIDO DE LOS INSTRUMENTOS—CONOCIMIENTO DEL TESTADOR POR EL NOTARIO Y LOS TESTIGOS—CAPACIDAD LEGAL DEL TESTADOR PARA TESTAR—OMISIÓN DE CONSIGNAR QUE LOS TESTIGOS SE ASEGURARON DE ELLA.—El que el notario autorizante de un testamento deje de consignar expresamente en el mismo que los testigos procuraron asegurarse de que a su juicio tenía el testador capacidad legal necesaria para testar, no vicia de nulidad el testamento.

NOTA de *L. Capó Matres,* R. (San Germán), denegando inscripción de una escritura de partición de herencia en cuanto a la parte que se adjudicó a un heredero por herencia testada del padre. *Revocada* y ordenada la inscripción.

*Ricardo del Toro Soler,* abogado del recurrente; el recurrido compareció por escrito.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Presentada para su inscripción en el Registro de la Propiedad de San Germán la escritura pública No. 1 de partición de herencia otorgada en Cabo Rojo, P. R., el 12 de enero de 1926, ante el Notario Público Ricardo del Toro, el registrador la inscribió en cuanto a ciertas adjudicaciones procedentes de una herencia intestada y la denegó—

"en cuanto a la parte adjudicada en dichas fincas al mismo here-

dero por herencia testada de su padre, Claudio Morales Velazco, por observarse que en el testamento otorgado por el causante inserto literalmente en la escritura y que sirve de base para formalizar la misma, tiene un vicio inductivo de nulidad, porque el notario autorizante ha dejado de consignar en el mismo el importante requisito de hacerse constar que los testigos que intervinieron en el otorgamiento del citado testamento, de procurar asegurarse de que a su juicio tenía el testador capacidad para testar, según claramente lo exige y dispone el art. 693 del vigente Código Civil, cuya nulidad faltando tal importante extremo, la declara el art. 695 del referido texto legal.''

El artículo 693 del Código Civil invocado por el registrador, en lo pertinente, dice:

''El notario y dos de los testigos que autoricen el testamento deberán conocer al testador, y si no lo conocieren, se identificará su persona con dos testigos que le conozcan y sean conocidos del mismo notario y de los testigos instrumentales. También procurarán el notario y los testigos asegurarse de que, a su juicio, tiene el testador la capacidad legal necesaria para testar.''

Examinemos el documento de que se trata para ver si cumple o nó con el precepto transcrito. En sus comienzos, dice el notario:

''Comparece don Claudio Morales y Velazco, de setenta años de edad, agricultor-propietario, viudo y vecino de este Municipio. Doy fe del conocimiento personal del compareciente y, por sus manifestaciones,·de su edad, estado, profesión y vecindad; me asegura hallarse en el pleno uso de sus derechos civiles y tiene, a mi juicio, la capacidad legal necesaria para otorgar testamento, pues se encuentra en salud y conserva su voz perfectamente inteligible y su inteligencia clara y expedita.''

Siguen las disposiciones. Se trata de un caso sencillo. El testador estuvo casado en únicas nupcias con doña Carmen Pérez y Montalvo en cuyo matrimonio procreó sólo dos hijos, José Nicolás y José Ciriaco Morales y Pérez, que vivían y eran mayores de edad al tiempo del otorgamiento, y distribuyó sus bienes así: legó la quinta parte de los mis-

mos a los cinco hijos de María Luisa Correa y de las otras
cuatro quintas partes instituyó herederos, por partes iguales,
a sus dichos hijos José Nicolás y José Ciriaco.    Fueron tes-
tigos sin tacha legal los vecinos Eladio Vega y Soltero, Gon-
zalo García y Marini y José Jiménez y Font.    Y dijo final-
mente, el Notario:

"Todos manifiestan que ven, conocen, oyen y entienden al tes-
tador; ratifican haber oído de éste su conformidad con las anterio-
res disposiciones testamentarias y firman con él.    De todo lo cual,
así como de conocer los mencionados testigos, y de haberse cumplido
todas las prescripciones del Código Civil vigente respecto a los tes-
tamentos abiertos, yo, el notario autorizante, doy fe."

Es indudable que se hubiera evitado toda dificultad si
el Notario lo mismo que expresó la forma en que él se cer-
cioró de la capacidad del otorgante, lo hubiera hecho con
respecto a los testigos.    Una fórmula que consta en la pá-
gina 857 del tomo 2, del Tratado de Notaría por Fernández,
dice: "A mi juicio, *corroborado por el de los testigos,* veri-
fica Doña Eleuteria este acto en la integridad de sus funcio-
nes mentales, sin que medie violencia, dolo, fraude ni otra
causa de nulidad, y tiene capacidad legal para otorgar tes-
tamento.    En cuya virtud, a presencia de los testigos que la
ven, oyen y entienden perfectamente, empieza a manifestar
su última voluntad, y yo el Notario a reducirla a escrito en
las cláusulas siguientes:".    Las itálicas son nuestras.

Pero no estamos conformes con el registrador en que
la omisión advertida vicie de nulidad el testamento.    La ley
no exige que se consigne expresamente en el testamento
mismo que la recomendación que hace con respecto a los tes-
tigos quedó cumplida y la forma en que lo fué, y no exigién-
dolo es bastante que el notario dé fe como dió en este caso
de haberse observado "todas las prescripciones exigidas por
el Código Civil vigente respecto a los testamentos abiertos."

La cuestión no es nueva.    Ha sido decidida implícitamente

varias veces por el Tribunal Supremo de España (sentencia de 25 de febrero de 1881, 45 J. C. 353); por la Dirección General de los Registros de España (resolución de 26˙ de mayo de 1899), por el Presidente del Tribunal Supremo de Cuba (resolución de 21 febrero de 1903, 17 Jurisprudencia Civil, Cuba, 445) y por esta misma Corte Suprema de Puerto Rico en el caso de *Bardeguez* v. *El Registrador,* 27 D.P.R. 214.

Parece conveniente transcribir uno de los considerandos de la resolución cubana.    Es así:

"*Considerando:* que al exponer el Código Civil en su artículo seiscientos ochenta y cinco que el Notario y dos de los testigos que autoricen el testamento deberán conocer al testador, y si no lo conocieren se identificará su persona con dos testigos que le conozcan y sean conocidos del mismo Notario y de los testigos instrumentales; salta desde luego a la vista que no se consigna en tal precepto que sea obligación del Notario autorizante del testamento hacer constar expresa o especialmente, o sea, dándose fe de ello, que dos de los testigos conocen al testador, pudiendo afirmarse, dada la letra de dicho artículo, que desde el instante en que la facción de un testamento abierto no procedió el notario a identificar la persona del testador con dos testigos que le conocieran y fueran conocidos del mismo Notario y de los testigos instrumentales, es lógico y jurídico entender, presumir y dar por cierto y verdadero, que dos de los testigos autorizantes de dicho testamento conocían al testador; siendo por otra parte una verdad que es algo peligroso sujetar a un exagerado criterio de estricto formalismo la validez o nulidad de los testamentos, por omitirse lo que la ley expresamente no ordena en su letra que se haga constar, no debiendo perderse de vista que, además de dar fe el Notario en el testamento de que se trata de conocer al otorgante y testigos, y asegurar al propio tiempo que se habían observado todas las prescripciones de derecho, cuando el Código quiere que se haga constar algún requisito en materia de testamentos lo ordena expresamente, como puede verse en sus artículos seiscientos ochenta y seis, seiscientos noventa y cinco y seiscientos noventa y nueve."

*Debe revocarse la nota recurrida y ordenarse la inscripción solicitada.*