ELISA PACHECO, demandante y apelada, *v.* SUCESIÓN de ANTONIO PACHECO RODRÍGUEZ, ETC., demandada y apelante.

Núm. 9383.—*Sometido:* Diciembre 12, 1946. *Resuelto:* Enero 13, 1947.

*Ernesto Ramos Antonini*, abogado de los apelantes; *Carlos E. Colón*, abogado de la apelada.

El Juez Presidente Señor Travieso emitió la opinión del tribunal.

Elisa Pacheco, hija y heredera forzosa de Antonio Pacheco Rodríguez, alega en su demanda que el testamento abierto otorgado por su padre en 23 de diciembre de 1940 y consignado en la escritura pública número diez autorizada por el notario público Licenciado Ernesto Ramos Antonini, es nulo y sin valor legal alguno "porque el notario autorizante de la escritura no expresa la hora del otorgamiento del acto testamentario que encierra la misma, según requiere expresamente el artículo 645 del Código Civil, Edición 1930."

No existe controversia alguna en cuanto a los hechos. La escritura contentiva del testamento impugnado aparece otorgada "En Yauco, Puerto Rico, a los veinte y tres días del mes de diciembre de mil novecientos cuarenta", sin que en parte alguna del instrumento se haya hecho constar la hora en que el mismo fué otorgado por el testador.

Contestaron algunos de los demandados admitiendo los hechos expuestos en la demanda y alegando como defensa especial que en la misma fecha del otorgamiento del testamento el notario autorizante, cumpliendo con las disposiciones de la ley, remitió al Secretario Repórter del Tribunal Supremo una certificación en la que hizo constar lo siguiente:

"Certifico por la presente que en el día de hoy, 23 de diciembre de 1940, *a las ocho y media de la noche,* en la ciudad de Yauco y ante los testigos instrumentales Dr. Arquelio Ramírez Marini, Antonio J. Battistini y Domingo J. Olivieri Grau ha otorgado testamento abierto don Antonio Pacheco Rodríguez, mayor de edad, soltero, propietario, natural de Guayanilla y vecino de Yauco, P. R."

La única cuestión planteada ante la corte inferior fué la siguiente: ¿Es nulo en Puerto Rico un testamento abierto en el cual no se consigne expresamente la hora de su otorgamiento? El fallo fué adverso a los demandados, quienes interpusieron el presente recurso. Alegan que la corte sentenciadora cometió error al interpretar el art. 645 del Código

Civil y arguyen que el hecho de que no se exprese la hora del otorgamiento en el testamento no produce su nulidad; y, además, que en caso de que la omisión de la hora sea un defecto, el mismo fué subsanado cuando el notario remitió al Secretario del Tribunal Supremo la certificación arriba transcrita, en la cual se expresa específicamente la hora en que se otorgó el testamento, uniendo una copia de dicha certificación a la escritura original.

El artículo 636 del Código Civil (Ed. de 1930) dispone, en lenguaje claro y terminante, que "Será nulo el testamento en cuyo otorgamiento no se hayan observado las formalidades respectivamente establecidas en este capítulo". Las formalidades que deberán observarse en el otorgamiento de un testamento abierto son las prescritas por el art. 645 del mismo Código, que dice:

"*Artículo 645*. El testador expresará su última voluntad al notario y a los testigos. Redactado el testamento con arreglo a ella y con expresión del lugar, año, mes, *día y hora* de su otorgamiento, se leerá en alta voz, para que el testador manifieste si está conforme con su voluntad. Tanto el testador como los testigos podrán leer por sí mismos el testamento, debiendo el notario advertirles de este su derecho." (Bastardillas nuestras.)

En sus Comentarios sobre el artículo 695 del Código Civil Español, equivalente al 645 de nuestro Código, supra, dice Manresa (Tomo V, 5ta. Ed., págs. 514-515):

"En el deseo de rodear al testamento abierto del mayor número de precauciones posibles, el legislador, terminantemente previene que en el testamento se exprese el lugar, el año, el mes, el día y la hora del otorgamiento, como otros tantos datos que pueden contribuir a depurar la eficacia y autenticidad del mismo.

"   *   *   *   *   *   *   *

"Exige también el artículo la expresión de la fecha con el detalle indicado para poder determinar si el testador tenía o no en el acto del otorgamiento la capacidad legal necesaria para ello, y además para poder apreciar, en el caso de existir varios testamentos de una misma fecha otorgados por el testador, cuál de ellos es anterior o posterior para los efectos de su derogación o subsistencia."

Y el mismo autor en sus Comentarios al artículo 687 del Código Español, idéntico al 636 del nuestro, dice (Tomo V, págs. 471–472, 5ta. Ed.):

"En efecto; la validez del testamento, como la de todos los actos jurídicos, depende de la observancia de la ley que lo regule, y habiéndose establecido en el presente capítulo los requisitos que deben observarse en cada una de las diversas formas admitidas para la ordenación de las últimas voluntades, es de todo punto evidente que la falta de cumplimiento de sus respectivas prescripciones ha de producir necesariamente, por ministerio de la ley, la nulidad del acto ejecutado con infracción de las disposiciones legales que le regulen.

"La prescripción de este artículo es una lógica consecuencia del criterio adoptado en el 4º., y con arreglo a él, sólo en el caso de que el Código así lo estableciera expresamente por vía de excepción, sería cuando podría prosperar el testamento en cuyo otorgamiento no se hubieran observado las formalidades exigidas para los de su clase.

"Aunque el artículo que examinamos habla sólo de *formalidades,* no debe entenderse circunscrito su precepto a las meras ritualidades de forma, sino que se ha empleado dicha palabra en el concepto de las solemnidades todas del testamento, pues, como tiene declarado el Tribunal Supremo, el Código no distingue entre unas y otras, sino que indistintamente usa ambas denominaciones como sinónimas, por referirse las dos a la forma o modo de hacer el otorgamiento."

Vicente Sancho Tello, en su obra "Instrumentos Públicos", Vol. 1, pág. 92, Tercera Edición, comentando los ya citados artículos del Código Civil, dice:

"No sólo por la revocabilidad del testamento sino para comprobar la capacidad del testador, es indispensable, la fijación de la hora, no bastando expresarla aproximadamente, sino con la precisión posible."

El caso de *Velasco* v. *López,* 1 Jurisprudencia Filipina, pág. 750, presentó al Tribunal Supremo de las Filipinas hechos idénticos a los del caso que estamos considerando. La fecha del testamento impugnado se había consignado en los siguientes términos: "En San Fernando 22 de Diciembre de 1893." El testamento fué declarado nulo, expresándose el Tribunal así:

"No se expresa la hora, y se alega que esta omisión hace nulo el testamento. El lugar y la fecha en que se ejecuta determinado acto

jurídico son a menudo circunstancias importantes para determinar su validez o consecuencias. Ordinariamente el tiempo de la ejecución de un acto queda suficientemente expresado consignado el año, mes y día. El artículo 695 dispone que en los testamentos abiertos el acto del otorgamiento deberá fijarse consignando no solamente estos detalles sino también la hora. La Ley define así explícitamente con respecto a los testamentos abiertos, en qué ha de consistir esta formalidad particular. No cabe hacer deducciones como ocurriría por ejemplo, si lo dispuesto fuera simplemente que el testamento deba estar fechado. No hay lugar a interpretación.

"    *    *    *    *    *    *    *

"La sanción del artículo 687 es general. No se reconoce en él, excepciones de ningún género. Su texto excluye la idea de toda distinción entre formalidades esenciales y no esenciales. Todas las formalidades prescritas son de la misma manera esenciales, y para que la expresión de la voluntad testamentaria pueda surtir el efecto de un testamento y producir consecuencias legales como tal, debe estar revestida de todas estas formalidades, por insignificantes que sean en sí, o por inútiles que sean al considerarlas, con relación a las circunstancias del caso concreto.

"Tal es indudablemente el efecto del artículo 687 considerado independientemente, y nosotros no hallamos nada en las demás disposiciones del Código sobre testamentos que modifique de manera directa el significado de este artículo o que por inferencia indique distinta intención legislativa.

"Un testamento abierto en que no se haga constar la hora de su otorgamiento, además del día, mes y año del mismo, es nulo y de ningún valor.

"La observancia de todas las formalidades prescritas para el otorgamiento de un testamento, es esencial a su validez."

Estamos de acuerdo con las autoridades citadas en que la expresión en el testamento abierto de la hora en que el mismo fué otorgado es un requisito esencial e indispensable para su validez. Al exigir que en la escritura se haga constar no solamente al año, el mes y el día si que también la hora de su otorgamiento, el legislador pensó seguramente en la posibilidad de que el testador otorgase dos o más testamentos en un mismo día, en cuyo caso la fijación de la hora en que cada uno de ellos fué otorgado sería el modo más se-

guro para poder determinar cuál de los testamentos debía
ser considerado como la última voluntad del testador; y, sin
duda alguna, el legislador debió pensar también en que si el
art. 615 del Código Civil dispone que "para apreciar la ca-
pacidad del testador se atenderá únicamente al estado en
que se halle al tiempo de otorgar el testamento", y el art.
645 del mismo Código exige que en el testamento abierto "el
notario hará siempre constar que, a su juicio, se halla el
testador con la capacidad legal necesaria para otorgar tes-
tamento", debía exigirse como requisito esencial e indispen-
sable para la eficacia y validez de un testamento la consig-
nación en el mismo de la hora de su otorgamiento. Es en
ese momento—la hora del otorgamiento—que el notario
puede y debe dar fe de que, a su juicio, el testador se halla
con la capacidad legal necesaria para testar.

¿Quedó subsanado el defecto, por la certificación de
la hora del otorgamiento enviada por el notario al Secreta-
rio del Tribunal Supremo? Opinamos que no. Las decisio-
nes de esta Corte Suprema en *Bardeguez* v. *Registrador,* 27
D.P.R. 214 y en *Morales* v. *Registrador,* 35 D.P.R. 905; la
dictada por el Tribunal Supremo de Cuba en 21 de febrero
de 1903, 17 Jur. Civil, Cuba, 445; y la resolución de la Di-
rección General de los Registros de España, de 26 de mayo
de 1899 (Tomo VI, pág. 810), no sostienen la contención de
los apelantes. Si se examinan cuidadosamente dichas deci-
siones se verá que en ellas se establece una clara distinción
entre las omisiones que pueden ser subsanadas y aquéllas
que por no serlo producen inevitablemente la nulidad del tes-
tamento. Si lo omitido por el notario es algo que la ley no
exige que se consigne expresamente en el testamento, bastará
que el notario dé fe de haberse observado "todas las pres-
cripciones exigidas por el Código Civil vigente respecto a los
testamentos abiertos". Por eso se resolvió en los casos de
*Bardeguez* y de *Morales,* supra, que el no expresarse en un
testamento que los testigos conocían a la testadora no con-

vierte el testamento en una mera nulidad y que tampoco es nulo el testamento cuando el notario ha dejado de consignar expresamente en el mismo que los testigos procuraron asegurarse de que a su juicio el testador tenía la capacidad legal necesaria para testar. Empero, cuando el Código ordena que se haga constar expresamente algún requisito en el testamento mismo, la omisión de ese requisito es fatal para la validez del acto y no puede ser subsanada por la certificación de haberse observado todas las prescripciones legales. Ya hemos visto que la ley exige que se consigne expresamente en el testamento mismo la hora del otorgamiento. La certificación de la hora del otorgamiento, librada *a posteriori* por el notario autorizante, no puede ni debe tener el efecto de convalidar un testamento que de acuerdo con la ley es nulo *ab initio*.

*La sentencia recurrida debe ser confirmada.*

El Juez Asociado Sr. Snyder no intervino.