GERÓNIMO QUIÑONES ARROYO y ANA LUISA QUIÑONES ARROYO, demandantes y recurrentes, *v.* RUDDY ESCALERA IRIZARRY y SOLEDAD ESCALERA, demandados y recurridos.

*Número:* R-70-246      *Resuelto:* 12 de mayo de 1971

---

*Carmelo Ávila Medina* y *Roberto Ávila Rivera,* abogados de los recurrentes; *Soledad Escalera, pro se; Samuel Maduro Classén,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

Debemos determinar en esta ocasión, en síntesis, si una acción para anular un testamento ha prescrito. Concluimos que sí por lo que procede confirmar la sentencia a ese efecto dictada por el tribunal de instancia.

Los hechos de este caso son los siguientes:

La Sra. Rosario Quiñones otorgó en el Condado de "El Paso", Estado de Tejas, un testamento por virtud del cual legó todos sus bienes, luego del pago de los gastos de su enfermedad y entierro y de sus deudas, al INSTITUTO DE LAS SIERVAS DEL SAGRADO CORAZÓN DE JESÚS Y DE LOS POBRES (en lo sucesivo designado como el Instituto). Designó a la Madre Superiora como su albacea. Lo suscribió en 22 de diciembre de 1933 ante dos testigos quienes también firmaron el documento. A continuación el notario Cleofas Calleros, de El Paso, indicó bajo su firma que cada una de las firmantes expresó que había firmado el documento "por las consideraciones y propósitos que en él están expresados." Al dorso aparece una certificación suscrita por otro notario al efecto de que María D. Madrazo dijo que conoció a Rosario Quiñones en 22 de diciembre de 1933; que fue una de las testigos del testamento de ésta al igual que María Amada Ramírez a quien también conoció en dicha fecha; que ambas firmaron

dicho testamento conjuntamente con la testadora; que entonces se enteró por la misma testadora que dicho documento era la última voluntad y testamento de ésta, el cual, después de haberlo leído, todas firmaron en dicha fecha. Por último, aparece otra certificación del Secretario de Estado del Estado de Tejas al efecto de que el notario Calleros cualificó como notario de El Paso en 2 de junio de 1933 por un término que expiraba el 1ro. de junio de 1935.

La Sra. Rosario Quiñones murió en 1ro. de octubre de 1940 en el Condado de Web, en Tejas. A su muerte dicha señora aparecía como dueña de una parcela de terreno en San Juan, de unos 589 metros.

El Instituto vendió dicha propiedad a los recurridos Escalera Irizarry, mediante escritura Núm. 27, otorgada en San Juan, Puerto Rico, el 9 de agosto de 1967, ante el notario Agustín Pérez Rodríguez, por la suma de $1,300, la cual fue inscrita en el Registro de la Propiedad de San Juan, Sección Primera, con el defecto subsanable de no expresarse el domicilio y demás circunstancias del Instituto y de no acreditarse que se hayan observado en el testamento los requisitos necesarios en cuanto a la forma y solemnidades requeridas por las leyes de Tejas.

En 14 de abril de 1969, los hermanos Gerónimo y Ana Luisa Quiñones Arroyo radicaron demanda en contra de los compradores del inmueble, los esposos Escalera Irizarry, alegando la nulidad de la inscripción de la referida compraventa y que actualmente los únicos dueños de dicho inmueble eran los recurrentes lo que se comprobaba por la correspondiente declaratoria de herederos que tramitaron.

Contestaron la demanda los esposos Escalera Irizarry negando los hechos de la demanda porque los demandantes no constituyen la Sucesión de Rosario Quiñones por no haber sido instituidos herederos en su testamento.

Como defensas especiales alegaron la prescripción de la acción de nulidad y, además, alegaron que los esposos Esca-

lera Irizarry son poseedores de buena fe y que el testamento es válido porque se han observado en el mismo todos los requisitos impuestos por ley.

Radicaron, además, los demandados un escrito que titularon "Excepción Previa a la Demanda" que en efecto es una repetición de lo alegado en la contestación. Luego radicaron mociones para enmendar la excepción previa y radicaron la contestación enmendada reiterando la defensa de nulidad de testamento y alegando la prescripción extraordinaria a contarse desde que se otorgó el testamento. Ambas partes han radicado numerosas mociones y alegatos en apoyo de sus distintas contenciones. Como parte del récord para la vista se ofrecieron la escritura de compraventa y el testamento en cuestión y la escritura de protocolización del mismo de fecha 14 de marzo de 1968, ante el notario Charles H. Juliá.

Solicitaron los recurridos sentencia sumaria por alegar que el testamento otorgado cumple con todos los requisitos y formalidades de la ley de Tejas. A su vez, los recurrentes también solicitaron sentencia sumaria por ser nulo el testamento.

El tribunal de instancia dictó sentencia en 31 de julio de 1970 al efecto de que no procede dictar sentencia declarando la nulidad del testamento debido a que la acción de nulidad está prescrita pues, siendo una acción personal, el término de prescripción es de 15 años a partir de la fecha en que el testamento se otorgó habiendo transcurrido dicho término ya que el testamento se otorgó en el año 1933.

Debemos resolver de entrada si el testamento en cuestión es o no es nulo. De serlo, debemos determinar si la acción para anularlo es personal. Si lo es, debemos determinar desde cuándo comienza el término prescriptivo de 15 años de tal acción. De no haber prescrito la acción debemos entonces determinar si los recurridos han adquirido título de la finca por haber estado en posesión de la misma de buena fe y con

justo título, ellos y el Instituto, durante 10 ó más años. (Art. 1857 del Código Civil, 31 L.P.R.A. sec. 5278.)

▪ A tenor con el Art. 11 del Código Civil (31 L.P.R.A. sec. 11) y según resolvimos en *Armstrong* v. *Armstrong*, 85 D.P.R. 404 (1962), los testamentos otorgados en un país extranjero de acuerdo con las formas y solemnidades de dicho país, son válidos en Puerto Rico en cuanto a la transmisión de bienes inmuebles en Puerto Rico. De manera que en cuanto a la validez y efectividad del testamento en cuestión debemos recurrir a la ley del Estado de Tejas.

▪ El testamento en este caso es nulo porque no llena los requisitos de la ley de Tejas pues (1) no aparece que fuera adverado dentro del término de cuatro años desde la muerte de la testadora como lo prescribe la ley de Tejas (Leyes de 1955, 54th Leg. pág. 88, Ch. 55 Vernon's *Civil Statutes of the State of Texas*, secs. 73, 74 y 94, págs. 318, 322 y 399), y (2) no se autenticó en forma que hiciese innecesaria su adveración según lo requiere el estatuto de Tejas previamente citado (Vernon's, *supra*, sec. 59, pág. 272), pues (a) el notario que dio fe de la firma del testamento por la testadora y los dos testigos no certificó que éstos eran mayores de 14 años, ni que éstos firmaran en presencia del testador; (b) y que la testadora era mayor de 19 años; y (c) la testadora y los testigos no firmaron el documento notarial de autenticación pues sólo uno de los testigos firmó lo que aparece ser tal autenticación.

▪ En Tejas un testamento no autenticado para evitar su adveración, que no es adverado como lo exige la ley, es ineficaz e inefectivo como medio de probar o transmitir el título de bienes inmuebles. *Teague, et al.,* v. *Wylie, et al.,* 110 S.W.2d 941 (Texas Ct. App. 1937).

Aun asumiendo que aplicáramos a los testamentos la norma mayoritaria de *Vda. de Ruiz* v. *Registrador*, 93 D.P.R. 914 (1967), al efecto de que la doctrina del Art. 11 del Có-

digo Civil debe interpretarse en forma facultativa, potestativa u opcional y no en forma coactiva o imperativa, el testamento en cuestión sigue siendo nulo bajo las disposiciones del Código Civil vigente de Puerto Rico ya que no es un testamento ológrafo pues no se escribió de puño y letra de la testadora, y de haberlo sido, no se protocolizó dentro de cinco años de muerta la testadora como manda el Art. 639 de dicho Código (31 L.P.R.A. sec. 2163). Tampoco puede considerarse como un testamento abierto eficaz pues no se consignó en el mismo la hora en que se otorgó. *Ex parte Planis* v. *Pueblo*, 42 D.P.R. 689 (1931); *García* v. *Rexach*, 65 D.P.R. 526, 529 (1945); *Pacheco* v. *Sucn. Pacheco*, 66 D.P.R. 796 (1947).

Ahora bien, es norma establecida que la acción para anular un testamento es personal, y por lo tanto, prescribe dentro de un término de 15 años. Este Tribunal dijo en *Arroyo* v. *Fernández*, 68 D.P.R. 514, 517 (1948), en efecto, que ese término debe contarse desde que el testamento se otorgó. Así también se afirma en la Sentencia del Tribunal Supremo de España de 20 de junio de 1949 pues dice este Tribunal que la acción nace desde que nace el derecho que es la fecha de otorgamiento del testamento.

Puede argüirse que esta doctrina no debe prevalecer pues prácticamente hará imposible en muchos casos la radicación de la acción de nulidad de testamento. No es posible radicarla en vida del testador dada la secretividad que siempre conlleva el acto testamentario. De manera que si el testador vive más de 15 años luego de testar, no hay medio de lograr luego la nulidad de su testamento.

Además, como indica Santa María (*Comentarios al Código Civil*, Tomo II, págs. 1022–1023), "El término de la prescripción extintiva comienza desde que nace el derecho y puede ser ejercitada sin estorbo por el actor o las personas de quienes trae causa; porque no cabe perder por abandono una acción mientras no sea ejercitable sino que tiene que ser *actio nata*; y por lo tanto para que la prescripción extintiva

comience a correr es preciso un derecho capaz de ser ejercitado, o sea, un derecho ya nacido, y agregado como entidad cierta y perfecta al patrimonio del titular."

Scaevola nos dice: ". . . nacida la acción por si el mismo se lesiona, el plazo de prescripción tendrá que contarse, en todo caso, desde que pudo ejercitarse la misma, que es tanto como decir desde que se hacía exigible una efectividad del derecho que éste, por su solo nacimiento, realización sinónima de la perfección no había podido lograr." (*Código Civil*, Tomo XXXII, Vol. II, págs. 889–890.)

La Sentencia del Tribunal Supremo de España de 29 de enero de 1952 dice que "El Artículo 1969 [1869 nuestro] no se refiere al vencimiento de la acción, sino a su ejercicio . . . para el término prescriptivo de las acciones debe computarse el tiempo en que eficazmente pudieron ejercitarse para lograr su total efecto . . . ."

En *Ríos* v. *Banco Popular*, 81 D.P.R. 378, 389, 390, 406 (1959), dijimos que el término de prescripción de 15 años debe contarse desde *"que pudo ejercitarse la acción. . . ."*; desde que se consuma el despojo del derecho; desde que el derecho del reclamante, aquí los recurrentes, "pudo ser realizado porque fue lesionado o violado . . ."; *"desde que hay acción. . ."*, o sea, *"el derecho ejercido en justicia. . ."*; desde que el derecho puede perseguirse judicialmente. (Art. 1869, *Código Civil*—31 L.P.R.A. sec. 5299.)

Puede argüirse que el derecho de los recurrentes a los bienes de la testadora de quien eran hermanos y por lo tanto no herederos forzosos, no podía surgir en su totalidad cuando se otorgó el testamento ya que la testadora hasta que murió, pudo tener hijos propios o adoptivos, que por el hecho de serlos podían extinguir en gran parte, el derecho hereditario de los recurrentes; que su derecho de acción con respecto al testamento en cuestión surgió cuando la testadora murió pues es desde ese momento que el derecho de los recurrentes "puede perseguirse judicialmente", "desde cuando el derecho

es capaz de ser ejercitado"; que desde ese momento surgió la obligación de los recurrentes de establecer su condición de herederos de la testadora; que no era suficiente que lo hicieran mediante la tramitación de una declaratoria de herederos pues debieron determinar qué bienes dejó la causante, quién los poseía, y con qué derecho dicho poseedor ocupaba dichos bienes; que es desde la fecha de la muerte de la causante que su derecho de herederos "fue lesionado o violado".

No podemos convenir con los recurrentes en que el punto de partida del término de prescripción de 15 años deba ser la fecha de protocolización del testamento en 1968 o la venta de la finca en cuestión en 1967 por ser una de éstas la fecha en que por primera vez tienen los recurrentes conocimiento del testamento en cuestión. Como hemos indicado previamente, el conocimiento preciso de la existencia del testamento no es el factor determinante del punto de partida del referido término prescriptivo.

■ De lo expuesto, resulta obvio que el término prescriptivo de la acción para anular el testamento se ha extinguido pues el término de 15 años ha transcurrido, bien desde que se otorgó el testamento en 1933, como desde la muerte de la testadora en 1940.

En vista de lo expuesto, resulta innecesario determinar si los recurridos han adquirido el dominio de la finca en cuestión mediante la posesión durante diez años con buena fe y justo título.

Como indicamos previamente, *debe confirmarse la sentencia del tribunal de instancia al efecto de que ha prescrito la acción de nulidad del testamento en cuestión.*

El Juez Asociado Señor Hernández Matos no intervino.