EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Iris Nilda Moreno Martínez<br><br>Apelada<br><br>vs.<br><br>Carmen Martínez Ventura, Rafael A. Moreno Vélez, et al<br><br>Apelantes | Certiorari<br><br>2006 TSPR 164<br><br>169 DPR \_\_\_\_ |
|---|---|

Número del Caso: AC-2005-8

Fecha: 10 de noviembre de 2006

Tribunal de Apelaciones:

        Región Judicial de Aguadilla

Juez Ponente:
        Hon. Carlos Soler Aquino

Abogado de la Parte Apelada:

        Lcdo. Héctor A. Sosa González

Abogado de la Parte Apelante:

        Lcdo. Fernando J. Nieves Camacho

Materia: Partición de Herencia

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Iris Nilda Moreno Martínez

    Apelada

       vs.                        AC-2005-8

Carmen Martínez Ventura, Rafael
A. Moreno Vélez, et al.

    Apelantes


RESOLUCIÓN

San Juan, Puerto Rico, a 10 de noviembre de 2006


    Atendida la moción de reconsideración radicada por la parte apelada, se provee no ha lugar.

    Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López emitió Opinión disidente en etapa de reconsideración. El Juez Presidente señor Hernández Denton no intervino.


                   Aida Ileana Oquendo Graulau
                Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Iris Nilda Moreno Martínez

    Apelada

        vs.                    AC-2005-8     APELACIÓN

Carmen Martínez Ventura;
Rafael A. Moreno Vélez, et al.

    Apelantes

OPINIÓN DISIDENTE EMITIDA, EN ETAPA DE RECONSIDERACIÓN, POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 10 de noviembre de 2006

Resulta verdaderamente lamentable y desconcertante que, mientras distinguidos tribunales de otras jurisdicciones hacen esfuerzos extraordinarios por mejorar la práctica de la Notaría, garantizando así, al máximo, los derechos de las partes otorgantes de los distintos instrumentos que se otorgan ante los notarios, el más alto foro judicial de este País haga todo lo contrario, emitiendo decisiones cuyo efecto es abaratar y desequilibrar la referida práctica en nuestra jurisdicción. La Opinión que se emitió en el presente caso es un claro y lastimoso ejemplo de ello. Veamos.

I

Los hechos del presente caso, en apretada síntesis, son los siguientes:

El 27 de abril de 1997, el señor Rafael Moreno Visbal otorgó un testamento abierto ante el notario Juan A. Méndez Miranda.[1] En la comparecencia del referido documento el notario Méndez Miranda indicó lo siguiente:

> "---DE UNA SOLA PARTE: DON RAFAEL MORENO VISBAL, mayor de edad, casado con doña Carmen Martínez Ventura, propietario, vecino y residente de Rincón, Puerto Rico, seguro social número cinco ocho dos guión tres dos guión cinco cuatro tres nueve (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), <u>identificado con la licencia número (268391).-----DOY FE de haberme asegurado de la identidad del compareciente por los medios establecidos en el Artículo (diecisiete(c) [sic] (17(c) [sic] de la Ley Notarial</u>, y por sus dichos de su edad, estado civil, profesión y vecindad. Me asegura tener y a mi juicio tiene la capacidad legal necesaria para este otorgamiento y en tal virtud libre y voluntariamente:------------------ --------------------------------EXPONE--------- -----------" (Énfasis nuestro).

Posteriormente y en la dación de fe <u>general</u> que el notario Méndez Miranda incluyó al final del testamento, éste indicó lo siguiente:

> "--Del conocimiento, profesión y vecindad de el otorgante, de haberse practicado en un solo acto sin interrupción de clase alguno [sic] todas las formalidades legales, de todo lo contenido en este Instrumento Público. DOY FE.-----------"

---

[1] En dicho documento Moreno Visbal designó herederos en cuanto al tercio de legítima estricta a sus hijos Iris N. e Israel, ambos de apellidos Moreno Martínez, y en cuanto a los tercios de mejora y libre disposición designó a su nieto Rafael A. Moreno Vélez y a su esposa Carmen Martínez Ventura.

El 18 de junio de 1998 Moreno Visbal falleció y en marzo de 1999, su hija Iris N. Moreno Martínez --en adelante, la recurrida-- presentó una demanda sobre división de bienes hereditarios ante el Tribunal de Primera Instancia, Sala Superior de Aguadilla contra Carmen Martínez Ventura y Rafael Moreno Vélez --en adelante, los peticionarios--. En una posterior enmienda a la demanda, Moreno Martínez adujo que el testamento antes mencionado era nulo toda vez que en el mismo el notario no dio fe de conocer personalmente al testador ni lo identificó a través de testigos de conocimiento ni por los medios supletorios establecidos por ley.

Tras varios trámites procesales, Moreno Martínez presentó una solicitud de sentencia sumaria en la que alegó que no existía controversia de hechos sustanciales y que el tribunal sólo debía dirimir si el aludido testamento era nulo ab initio por no haberse observado las solemnidades exigidas por el Código Civil para identificar al testador.

Luego de evaluar las posiciones de ambas partes, el foro primario emitió una sentencia sumaria parcial en la que determinó que el notario Méndez Miranda omitió la formalidad de acreditar el conocimiento del testador y decretó la nulidad del mismo.

Insatisfechos con la determinación del foro primario, Martínez Ventura y Moreno Vélez acudieron --mediante recurso de apelación-- ante el Tribunal de Apelaciones.

Adujeron, en síntesis, que el foro de instancia erró al decretar la nulidad del testamento abierto otorgado por Moreno Visbal, toda vez que el notario sí dio fe de conocer personalmente al testador y en adición a ello ratificó dicho conocimiento mediante la utilización de los métodos supletorios establecidos en la Ley Notarial.

Tras analizar las posiciones de ambas partes, el Tribunal de Apelaciones confirmó la determinación del foro primario. En su sentencia, el referido foro apelativo determinó que aunque el notario desconocía la identidad del testador y se aseguró de la misma a través de los medios establecidos en el Artículo 17(c) de la Ley Notarial, éste no hizo constar expresamente que le fue imposible identificar al testador mediante el método directo o a través de los testigos de conocimiento.

Aun inconformes, los demandados acudieron ––mediante recurso de apelación–– ante este Tribunal. Alegan que procede revocar la sentencia emitida por el foro apelativo intermedio debido a que dicho foro incidió:

> … al confirmar la Sentencia Parcial emitida por el Tribunal de Primera Instancia, que concluyó que el Testamento abierto otorgado por el causante Rafael Moreno Visbal es nulo "Ab-Initio", por no haberse supuestamente observado en él, las formalidades relacionadas con la identificación del Testador.

Expedimos el recurso. El pasado 28 de junio de 2006 una mayoría de los integrantes del Tribunal tuvo a bien ––equivocadamente, a nuestro juicio–– revocar las sentencias emitidas tanto por el Tribunal de Apelaciones

como por el Tribunal de Primera Instancia. En dicha ocasión disentimos mediante una expresión a esos efectos. En el día de hoy —y en etapa de reconsideración— fundamentamos dicho disenso.

II

Actuando como portadora de su propia, única y exclusiva verdad, la Mayoría concluye —<u>de manera peligrosamente especulativa</u>— que, aun cuando en el testamento que nos ocupa, el notario autorizante "aparentemente" identificó al testador mediante medios supletorios bajo la premisa de que "para que falte, mejor que sobre", bajo ningún concepto puede entenderse que el notario autorizante recurrió a este medio de identificación porque no conocía personalmente al testador.

Amparado en tales argumentos, y en la bola de cristal que utiliza para predecir lo ocurrido, la mayoría del Tribunal establece una nueva normativa en materia testamentaria al señalar que cuando el notario autorizante combina un medio supletorio de identificación con una dación de fe en torno al conocimiento del testador, los tribunales deberán "cerciorarse", *a posteriori*, de si en efecto el notario conocía personalmente al testador, antes de resolver si el testamento es nulo o no; añade que "[p]ara llevar a cabo dicho análisis los tribunales podrán

considerar cualquier evidencia admisible y pertinente, sin tener que limitarse al texto del testamento en cuestión…"

De esta forma, el Tribunal recurre a la peligrosa práctica --rechazada de plano en Deliz Muñoz v. Igartúa, res. el 23 de enero de 2003, 2003 T.S.P.R. 4; Paz v. Fernández, 76 D.P.R. 742, 752 (1954) y Pacheco v. Sucn. Pacheco, 66 D.P.R. 796, 802 (1947)-- de subsanar la omisión de una formalidad de fondo mediante la presentación, *a posteriori*, de evidencia que "alegadamente" demuestre que el notario autorizante cumplió con la misma. Asimismo, burla la solemnidad de la norma establecida en el Artículo 635 del Código Civil, 31 L.P.R.A. sec. 2151, al permitir que el notario autorizante identifique al testador, mediante prueba documental, sin consignar expresamente en el testamento que le era imposible identificar a éste mediante el método directo o por medio de testigos de conocimiento.

III

Es norma altamente reiterada por este Tribunal que en materia testamentaria, la forma es algo tan solemne que si no se observan las formalidades delineadas por el estatuto no existe testamento. Así, hemos señalado que la forma exigida por ley es tan fundamental para la validez del testamento que "su defecto acarrea su inexistencia, por muy convincentes y firmes que sean las pruebas, conseguidas por otros medios, de la voluntad del

testador…". <u>Deliz Muñoz</u> v. <u>Igartúa</u>, ante. Del mismo modo, hemos indicado que estas "...formalidades no son simples cuestiones de evidencia, sino requisitos sustantivos, de los cuales depende su validez". <u>Deliz Muñoz</u> v. <u>Igartúa</u>, ante; véase, además, *In re* <u>Padilla Santiago</u>, res. el 5 de marzo de 2003, 2003 T.S.P.R. 46.

Ahora bien, es importante enfatizar que la solemnidad testamentaria a la que hacemos referencia <u>no</u> se refiere a insignificantes requisitos de forma, <u>sino a aquellos que</u> <u>sean esenciales e imprescindibles para garantizar su</u> <u>autenticidad y la veracidad de la declaración de voluntad</u> <u>del testador</u>. A esos efectos, hemos resuelto que no todas las omisiones en que pueda incurrir un notario necesariamente vician de nulidad el testamento.[2] Las <u>únicas</u> que acarrean la nulidad absoluta del acto testamentario son las que la ley exige que aparezcan expresamente consignadas en la escritura de testamento y cuyo cumplimiento debe surgir expresamente de la faz del documento.[3]

---

[2] <u>Deliz Muñoz</u> v. <u>Igartúa</u>, ante; <u>Morales</u> v. <u>Registrador</u>, 35 D.P.R. 905, 907-08 (1926); <u>Paz</u> v. <u>Fernández</u>, 76 D.P.R. 742, 752-53; <u>Pacheco</u> v. <u>Sucn. Pacheco</u>, ante, a las págs. 801-02.

[3] Con relación a estas formalidades hemos resuelto que la omisión de las mismas no puede ser subsanada mediante la presentación de prueba extrínseca o por la dación de fe general de que se han cumplido todas las formalidades exigidas por la ley. De esta forma hemos enfatizado que "en este caso, y tratándose de requisitos esenciales, su inobservancia produce *ab initio* la nulidad del testamento." *Ibid.*

De particular pertinencia a la controversia ante nos, este Tribunal ha resuelto que la identificación de la persona del testador constituye una de las solemnidades más fundamentales del acto testamentario. Véase: Deliz Muñoz v. Igartúa, ante. En ese sentido, hemos sido enfáticos al señalar que el requisito de conocimiento permite la existencia de una correspondencia real y legítima entre la persona y la firma, lo que evita la suplantación de las partes en el otorgamiento. Véase: In re Maldonado Rivera, res. el 31 de marzo de 2003, 2003 T.S.P.R. 56.

El Código Civil de Puerto Rico establece, de manera clara y expresa, los mecanismos a ser utilizados por los notarios autorizantes para identificar al testador y el orden de prelación de los mismos.[4] Así, pues, el Código contempla tres métodos de identificación: conocimiento del

---

Como regla general, para identificar si estamos ante una formalidad de las que acarrea la nulidad absoluta del testamento es necesario evaluar si nuestro ordenamiento exige o no que se consigne expresamente el cumplimiento de la formalidad en cuestión. Así, hemos hecho claro que "cuando el Código ordena que se haga constar expresamente algún requisito en el testamento mismo, la omisión de ese requisito es fatal para la validez del acto y no puede ser subsanada por la certificación general de haberse observado todas las prescripciones legales." Véase: Pacheco v. Sucn. Pacheco, ante, a la pág. 802.

[4] Debe recordarse, sin embargo, que en el testamento abierto, como en cualquier escritura, la Ley Notarial y su Reglamento rigen supletoriamente, complementando y asegurando el cumplimiento de las disposiciones del Código Civil. In re Irlanda Pérez, res. el 30 de junio de 2004, 2004 T.S.P.R. 117.

notario y de los testigos[5]; identificación por testigos de conocimiento[6]; e identificación por reseña de documentos y señas personales.[7] El primero de éstos, denominado conocimiento directo y considerado el más idóneo y normalmente utilizado[8], consiste en el conocimiento personal que del testador tengan el notario y dos de los testigos que autoricen el testamento; mientras que el segundo consiste en identificar la persona del testador con dos testigos que le conozcan y que, a su vez, sean conocidos del notario y de los testigos instrumentales.

Según señaláramos en Deliz Muñoz v. Igartúa, ante, "[e]n el supuesto de que se identifique al testador a través de uno de estos dos métodos, entonces tendrá que cumplirse con lo dispuesto en el Artículo 649 del Código Civil, ante." Éste ordena al notario que dé fe al final del testamento de conocer al testador o a los testigos de conocimiento, en caso de que éstos sean utilizados. Este Artículo señala, además, que "se dará fe al final del testamento de haberse cumplido todas las dichas formalidades."[9]

---

[5] Artículo 634 del Código Civil, 31 L.P.R.A. sec. 2150.

[6] *Ibid.*

[7] Artículo 635 del Código Civil, 31 L.P.R.A. sec. 2151.

[8] *In re* Olmo Olmo, 113 D.P.R. 441, 461 (1982).

[9] En Cintrón v. Cintrón, 70 D.P.R. 770, 781 (1950), aclaramos que todo notario debe consignar esa cláusula general al final del testamento para evitar " el menor

Por su parte, el Artículo 635 establece y ordena que "[s]i no pudiere identificarse la persona del testador en la forma prevenida en la sección que precede, se declarara esta circunstancia por el notario, o por los testigos en su caso, reseñando lo (sic) documentos que el testador presente con dicho objeto y las señas personales del mismo ...". Como vemos, "en el supuesto de que el notario o los testigos instrumentales no conozcan al testador, y no sea posible la identificación a través de dos testigos de conocimiento, entonces, *y sólo entonces*, es que se activa el mandato estatutario al efecto de recurrir a la identificación por prueba documental." Deliz Muñoz v. Igartúa, ante.

Por otra parte, el notario que recurra a este tercer medio de identificación tendrá la obligación de consignar expresamente en el testamento que le es imposible identificar al testador mediante el método directo o por

---

motivo de impugnación". En esa ocasión expresamos que esta disposición no exige el uso de una fórmula sacramental y que si del testamento se desprende que se ha cumplido con cada una de las formalidades que prescribe la ley, el hecho de no consignar una dación de fe general no justifica la anulación del testamento. Esta normativa fue objeto de aclaración en Deliz Muñoz v. Igartúa, ante, donde señalamos que no es posible sostener la validez de un testamento donde no se haya incluido una dación de fe específica ––aunque del testamento claramente se desprenda su cumplimiento–– cuando se trata de una de las formalidades que el Código exige que de su cumplimiento se de fe expresamente.

medio de testigos de conocimiento.[10] Según dejáramos claramente establecido en Deliz Muñoz, "[e]stos requisitos constituyen formalidades de fondo por ser de los esenciales que el Código exige sean consignados expresamente en el testamento."[11]

Según hemos resuelto, estos tres métodos de identificación han sido prescritos por el Código Civil como *numerus clausus,* los cuales están "presididos por el principio de subsidiariedad, de tal forma que sólo se puede utilizar uno de ellos en defecto de los anteriores." Véase: Deliz Muñoz v. Igartúa, ante. Así expresamente lo reiteró este Tribunal en *In re* Maldonado Rivera, ante, al señalar que no procede "mezclar" el método directo de conocimiento personal con la identificación por medio de documentos. En esa ocasión este Tribunal fue enfático al expresar que:

> [s]i el notario conoce a los testadores que comparecen ante sí, procede identificarles directamente, y según lo dispuesto en el Art. 634 del Código Civil, *supra*. Si el notario no conoce personalmente a los testadores, procede acudir al segundo método de identificación el cual dispone que se les identificará por medio de testigos de conocimiento. Sólo en casos en que el notario esté imposibilitado de

---

[10] Una segunda obligación que surge del Artículo 635, ante, es la de reseñar en la escritura de testamento los documentos presentados por el testador para acreditar su identidad y sus señas personales.

[11] Debemos recordar que es con relación a éstos que el Artículo 636 dispone que "[s]erá nulo el testamento en cuyo otorgamiento no se hayan observado las formalidades respectivamente establecidas en este capitulo."

identificar a los testadores por alguno de estos dos métodos, es que procede identificarlos por medio de documentos. <u>En tales circunstancias, el notario tiene la obligación de consignar la imposibilidad de acreditar el conocimiento directo o por testigos de conocimiento, y reseñar los documentos que utilizó bajo dicho supuesto.</u> (Énfasis en el original.)

## IV

La Opinión emitida por la mayoría de los integrantes de este Tribunal en el presente caso constituye el ejemplo más patente de lo que hemos denominado en el pasado como "legislación judicial". La peligrosa e irresponsable normativa establecida en el presente caso por el Tribunal da al traste con los estatutos que por años han regido en nuestra jurisdicción en materia de testamentos e invalida un sólido desarrollo jurisprudencial que data de muchos años.

En primer lugar, la Mayoría revoca *sub-silentio* la norma firmemente establecida por este Tribunal --<u>y sostenida por los más destacados tratadistas españoles</u>-- a los efectos de que cuando el Código ordena que se haga constar expresamente algún requisito en el testamento mismo, <u>la dación de fe tendrá que ser específica y determinada</u>, "sin que bajo ningún concepto puedan considerarse comprendidas en la formula general incluida al final del documento". <u>Deliz Muñoz</u> v. <u>Igartúa</u>, ante, <u>Pacheco</u> v. <u>Sucn. Pacheco</u>, ante, a la pág. 802.

Ya hemos señalado que el Artículo 649 del Código Civil ordena a todo notario que dé fe al final del testamento de conocer al testador o a los testigos de conocimiento, siempre que haya utilizado uno de estos dos métodos para identificar al otorgante. Según lo expresado anteriormente, en este caso el notario está obligado a incluir en el testamento una dación de fe específica sobre el conocimiento personal del testador, sin que ésta pueda incluirse en la expresión general manifestada al final del documento.

En el caso que hoy ocupa nuestra atención este requisito fue crasamente violentado, toda vez que el notario autorizante no sólo se limitó a consignar un alegado "conocimiento" en una dación de fe ordinaria y general, sino que, además, se trata de una aseveración que contrasta marcadamente con la verdadera identificación utilizada y consignada en el propio texto del testamento.

No existe controversia alguna en torno al hecho de que en el testamento aquí bajo análisis el notario autorizante expresó haber identificado al testador por medio de su licencia de conducir y dio fe --esta vez de forma específica y determinada-- de haberse asegurado de la identidad del compareciente por los medios establecidos en el Artículo 17(c) de la Ley Notarial. Según lo dispuesto expresamente en el Artículo 635 del Código Civil, en un caso como este --en que se recurrió a la identificación por medio de prueba documental-- el notario

estaba obligado, so pena de nulidad, a consignar expresamente en el cuerpo del testamento que le era imposible identificar al testador mediante uno de los métodos de identificación principales. El incumplimiento con esta formalidad testamentaria fue, precisamente, lo que llevó a ambos foros inferiores a decretar la nulidad del testamento aquí en controversia.

Ahora bien, con el expreso propósito de burlar esta directriz estatutaria, la mayoría del Tribunal recurre a la dación de fe genérica incluida al final del testamento, ignorando por completo el hecho de que la misma no cumple con el requisito de especificidad que se exige en este tipo de formalidad testamentaria. Peor aún, en su afán por lograr el resultado deseado la Mayoría pretende hacernos creer que la identificación por medios supletorios realizada por el notario autorizante se hizo bajo la premisa de que *"para que falte mejor que sobre"* y que el verdadero método de identificación utilizado en el presente caso fue el conocimiento personal del testador. Ello a pesar de que la única mención de conocimiento realizada por el notario se hizo de forma genérica al final del testamento, mientras que la reseña de documentos sí fue específica y determinada detallándose el documento utilizado y el número de identificación del mismo.

Vemos, pues, que estamos ante un caso extremo donde ninguno de los métodos de identificación utilizado por el notario autorizante cumple con los requisitos exigidos por

el Código Civil. Es evidente que no estamos --como pretende hacernos creer la Mayoría-- ante un caso en que se ha dado fe, de forma específica y determinada, del conocimiento del testador y que, en adición a esto, se ha empleado "de manera innecesaria" uno de los medios supletorios de identificación. Todo lo contrario, estamos ante un caso en que no se dio fe del conocimiento personal del testador, pero se incluyó una expresión general al final del testamento donde se hace una somera mención a este conocimiento. Siendo la identificación del testador una de las solemnidades más fundamentales del acto testamentario, nos resulta totalmente inaceptable avalar la validez de un testamento donde el notario autorizante no cumplió cabalmente con ninguno de los medios de identificación utilizados.

Por otra parte, y como corolario de la errónea Opinión emitida por la Mayoría, el Tribunal deja sin efecto la prohibición específica establecida en Deliz Muñoz v. Igartúa, ante, de presentar prueba extrínseca para subsanar una identificación defectuosa. Asimismo, se burla el carácter supletorio de los métodos de identificación al avalar la utilización, en un mismo testamento, de dos métodos de identificación distintos. De esta forma, promueve la incertidumbre jurídica que inevitablemente se desata al enfrentarnos a un documento donde el notario autorizante, a pesar de sostener que conoce al testador, entiende imperioso identificarlo a

través de un documento que efectivamente le confirme su identidad.

Otro dato interesante que evidencia el empeño incomprensible de la Mayoría de salvar el defectuoso testamento que hoy nos ocupa, lo encontramos al final de la Opinión emitida donde se asegura que "el notario Juan A. Méndez Miranda había autorizado anteriormente varias escrituras sobre segregación y donación en las que comparecieron el señor Moreno Visbal y su esposa la señora Martínez Ventura." Enumera el Tribunal la Escritura número noventa y seis (96) de 1995; Escritura número ciento sesenta y nueve (169) de 1996; y la Escritura número ocho (8) de 1997. Lo que omite mencionar, muy convenientemente, el Tribunal es que en las últimas dos escrituras el notario autorizante identificó al señor Moreno Visbal mediante su licencia de conducir y no hizo mención alguna al hecho de que lo conociera personalmente.

Como vemos, si a los únicos fines de la argumentación ignoráramos la prohibición de recurrir a prueba extrínseca para probar el conocimiento personal del testador, estaríamos en la misma incertidumbre ya que en unos casos el notario aseguró conocer a Don Rafael Moreno Visbal y en otros, curiosamente en las Escrituras otorgadas más recientemente, tuvo que recurrir a prueba documental para poder identificarlo. Un análisis del testamento que hoy ocupa nuestra atención y de las otras escrituras otorgadas por el notario Juan A. Méndez Rivera revela que éste

estaba más confundido --si es que ello es posible-- que la mayoría de los integrantes del Tribunal en el presente caso.

Definitivamente, y por la <u>imperiosa importancia</u> que reviste la identificación de la persona del testador, entendemos que este Tribunal estaba impedido de avalar un estado de incertidumbre tan patente y peligroso.

V

No hay duda de que, como afirma la Mayoría, "…la principal razón de ser de las formalidades testamentarias es proteger la voluntad del testador, …". Si ello es así, <u>preguntamos nosotros</u>: ¿no debe existir certeza absoluta sobre la <u>identidad del testador</u> cuya voluntad debemos proteger? Es por ello que los estatutos contenidos en el Código Civil, en materia de identificación testamentaria y su jurisprudencia interpretativa, han sido cuidadosamente elaborados a través de los años con el propósito de salvaguardar la autenticidad del documento. Cada uno de estos criterios tiene el propósito de <u>evitar la usurpación</u> <u>de la personalidad de otro</u> e imprimirle legitimidad presuntiva al instrumento. *In re* Olmo Olmo, 113 D.P.R. 441, 463 (1982). No es a este Tribunal a quien le corresponde cuestionar la sabiduría de estos estatutos, sino aplicarlos de conformidad a como fueron aprobados por el legislador.

En cuanto a este particular, nos sorprende sobremanera el hecho de que la Mayoría admita, abiertamente y sin reparo alguno, que se propone "atemperar" las formalidades testamentarias expresamente establecidas en el Código Civil de Puerto Rico para "ajustarlas a las cambiantes realidades de nuestra sociedad." Asimismo, resulta en extremo preocupante el hecho de que este Tribunal sostenga que al exigir el cumplimiento de las formalidades establecidas en el Código Civil los tribunales inferiores deben tener en cuenta que las mismas "responden, en gran medida, a las realidades sociales de la España de fines del Siglo XIX."

¿Olvida acaso este Tribunal que nuestra responsabilidad ministerial consiste en interpretar las leyes según fueron aprobadas y no "atemperarlas" cuando a nuestro juicio las mismas requieran ser enmendadas? ¿Confunde la Mayoría el deber de interpretación de este Tribunal con el de legislación de la Rama Legislativa?

Con gran preocupación observamos como, en materia testamentaria, este Tribunal encamina su rumbo a la ruta de la flexibilidad, dejando atrás las salvaguardas que históricamente hemos defendido. Hoy se declara la validez de un testamento en que se han combinado dos medios de identificación, ambos defectuosos, violándose todas las medidas cautelares que rigen esta materia. No sabemos, a ciencia cierta, las consecuencias que tenga en la comunidad jurídica una Opinión de este tipo, la cual

abarata y desequilibra la práctica de la Notaría en materia testamentaria. Lo que sí podemos afirmar, sin temor a equivocarnos, es que la decisión de la Mayoría ha puesto en jaque la certeza jurídica de las escrituras testamentarias que se otorgan en nuestra jurisdicción, razón por la cual no podemos avalar tan nefasto curso de acción.


                         FRANCISCO REBOLLO LÓPEZ
                             Juez Asociado