In Re Antonio Piñero Rodríguez, querellado.

Núm. 71.—*Sometido:* Abril 27, 1948. *Resuelto:* Mayo 18, 1948.

Antonio Piñero Rodríguez, pro se; J. Rivera Barreras, Fiscal del Tribunal Supremo, abogado de El Pueblo.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

El Procurador General de Puerto Rico, por conducto del Fiscal de este Tribunal, radicó querella contra el abogado Antonio Piñero Rodríguez y, a virtud de doce cargos especificados en ella, solicita se desafore a dicho letrado del ejercicio, de su profesión como abogado y notario. Notificada la querella, el querellado radicó su contestación en la cual se limitó a exponer (*a*) que en relación con el octavo cargo de la querella el Fiscal reconoce que los sellos de rentas internas que le faltaban a las escrituras de sus protocolos notariales, fueron entregados por el querellado al Archivero General del Distrito y éste procedió a adherirlos y cancelarlos en las respectivas escrituras; que la mayor parte de los sellos que faltaban eran de veinticinco centavos y esto se debió a error de cómputo y no a mala fe; (*b*) que las demás violaciones a la Ley Notarial, alegadas en la querella, son similares a las cometidas por el abogado Pablo Andino Espejo (*In re Andino*, 67 D.P.R. 84) y que este Tribunal re-

solvió en dicho caso que ninguna de ellas envuelve la comisión de fraude o delito alguno, ni que persona alguna haya sido perjudicada por la falta de cuidado por parte del notario, y (c) que el querellado se pone a la disposición de este Tribunal para cumplir y acatar la resolución que dictare, "tomando en consideración la querella, la declaración jurada prestada por este querellado ante el Hon. Fiscal, así como lo expuesto en esta contestación, sin celebración de vista.".

Al ser notificado con copia de la contestación del querellado, el Fiscal informó por escrito al Tribunal que las demás violaciones a la Ley Notarial contenidas en la querella y las cuales el querellado estima son similares a las del caso de *In re Andino,* supra, son distintas a los hechos que motivaron la querella en dicho caso y para que este Tribunal pueda así determinarlo, procede que se celebre una vista.

Concedimos entonces término al querellado para que informara por escrito si insistía en someter el caso por las alegaciones y sin celebración de vista, y el 21 de abril de 1948 el querellado radicó una moción en la que hace constar que "insiste en que este Hon. Tribunal resuelva el presente caso sin la celebración de vista y así lo solicita."

En esta forma, y por expresa solicitud del querellado, ha quedado el caso sometido, por las alegaciones de la querella y por la contestación, a nuestra consideración y fallo, sin la celebración de vista.

De ser cierta la alegación del querellado en cuanto a que los cargos incluídos en la querella, excepto el octavo, son similares a los del caso de *In re Andino,* supra, muy fácil y corta sería la resolución de este caso. Empero, una somera lectura de los cargos en uno y otro caso demuestran palmariamente que no existe tal similitud. Bastará sintetizar los cargos en el presente caso para así comprobarlo.

El primero, se refiere al protocolo del año 1935, el cual consta de tres tomos. Se alega en la querella que en el ter-

cer tomo aparece como última escritura la núm. 125 otorgada *el 16 de agosto de 1935,* sin nota de cierre; que dicha escritura núm. 125 fué otorgada por doña Georgina Ferrer Pérez, doña Margarita González, don Alfredo Feliciano y don José Padín. Sin embargo, del índice enviado a la Corte de Distrito de Arecibo por el querellado, (copia fotostática del cual se acompaña a la querella), aparece la escritura núm. 125 como otorgada por Emma Miró y José Padín *el día 6 de julio de 1935;* que a pesar de que dicha escritura núm. 125 aparece como la última otorgada en el tercer tomo del año 1935, el protocolo de dicho año no contiene las escrituras otorgadas ante el querellado durante el período del 15 de junio de 1935 al 28 de julio de 1935, según aparece de los índices notariales enviados a dicha corte y, por último, que el querellado no protocolizó las escrituras del número 126 a la número 173, otorgadas ante él desde el 15 de junio al 8 de diciembre de 1935, según aparecen éstas informadas en los índices notariales cuyas copias fotostáticas se acompañan.

Este primer cargo es serio. No se contrae únicamente a la diferencia de fecha y de partes en relación con la escritura núm. 125, sino que, también imputa al querellado el no haber protocolizado cuarenta y siete escrituras otorgadas ante él durante el período comprendido desde el 15 de junio al 8 de diciembre de 1935. El silencio del querellado al no contestar este cargo y no explicar en la investigación preliminar del caso dónde están estas escrituras,(¹) implica que,

---

(¹)De la declaración jurada prestada por el querellado ante el Fiscal, en la investigación preliminar de este caso, y la cual el querellado hace formar parte de su contestación a la querella, al ser interrogado sobre estas escrituras, aparece lo siguiente:

"P.—En el último tomo, o sea, donde aparece la escritura 125 a que he hecho mención anteriormente, no aparece la nota de cierre. . . . . .

R.—Yo no podría decir.

P.—De dicho protocolo, lo que se implica es que para ese año usted otorgó más escrituras.

R.—Pudiera ser que fuera así.

o bien dichas escrituras nunca fueron encuadernadas para formar el tomo cuarto del año 1935 o que, si lo fueron, dicho tomo cuarto se ha extraviado. El hecho escueto es que, ni dicho tomo ni las escrituras, fueron entregados por el querellado al Archivero General. La desaparición inexplicada de estas escrituras puede ser de graves consecuencias legales para las partes otorgantes y posiblemente para terceras·personas. El primer cargo ha quedado comprobado y el mismo demuestra no sólo una negligencia crasa, sino una violación de la Ley Notarial por parte del querellado en el desempeño de sus funciones como notario.

El segundo cargo imputa al querellado que noventa y seis escrituras de las otorgadas ante él como notario y que aparecen en los tres tomos del protocolo del año 1935 no concuerdan en sus números, fechas y nombres de los otorgantes, con los números, fechas y nombres de los otorgantes de las escrituras que hacía constar como otorgadas ante él, en

---

P.—¿No sabe dónde está ese otro protocolo, si es que existe?

R.—No, señor.

P.—¿Sabe si otorgó escrituras después de agosto 16 de 1935 hasta diciembre de ese mismo año, ·que es la fecha en que dicho protocolo debió haber sido cerrado?

R.—Pudiera ser que sí.

P.—Y, ¿qué es de ese protocolo o esas escrituras?

R.—Bueno, realmente yo, como no los entregué yo, sino mi esposa, tenía entendido que ·se habían entregado todos los protocolos. Esa es la realidad.

. . . . . . .

P.—Digo, para esa fecha continuó trabajando como notario desde 16 de agosto de 1935 hasta diciembre de ese mismo año, ¿continuó siendo notario?

R.—Hasta el 1945 que me hice cargo del Juzgado Municipal de Río Piedras.

P.—Para esta fecha, 16 de agosto 1935, hasta diciembre de ese mismo año 1935, ¿usted estuvo en Puerto Rico?

R.—Siempre yo he estado en Puerto Rico.

P.—Entonces, ¿necesariamente usted pudo haber otorgado escrituras?

. R.—Le estoy hablando de memoria.

P.—Pero, ¿no tiene algún dato que le haga recordar que para esos meses específicamente, usted otorgara escrituras?

R.—No, señor.

P.—Y no sabe dónde está el protocolo, o las escrituras, correspondientes al período del 16 de agosto de 1935, a diciembre de 1935, ¿no sabe?

R.—No, señor, en ·estos momentos no sé.

los índices notariales enviados por el querellado a la Corte de Distrito de Arecibo. Este cargo ha quedado comprobado por las copias fotostáticas de dichos índices y porque el querellado en su declaración jurada tampoco da explicación alguna al mismo.

El tercer cargo imputa al querellado el no haber hecho constar en los índices notariales que envió a la corte, la fecha del otorgamiento de las escrituras números 160 a 173 otorgadas ante él desde el 13 de octubre al 8 de diciembre de 1935. También aparece comprobado por dichos índices.

Los cargos cuarto y quinto imputan al querellado haber permitido, por descuido y negligencia inexcusables, que quince escrituras de los protocolos de los años 1934 y 1935 y siete escrituras del protocolo de 1942, fueron destruídas por la polilla y por algún ácido, respectivamente, y de las cuales ocho están en tan malas condiciones que no puede de-

---

P.—¿Usted vió la nota que puso el Juez Cordovés Arana en el tomo III del protocolo correspondiente al año 35, donde hace constar que: De este año 1935 aparece que falta un tomo, pues en el tomo III no aparece la nota de cierre, y se queda dicho tomo en el mes de agosto.

R.—No lo he visto. Los protocolos están en poder del Archivero General. No los he visto pues yo llevé los sellos que me dijeron que faltaban.

P.—Pero, ¿usted me dijo que conocía el informe?

R.—Sí, pero no quiero decir que he visto los protocolos.

P.—¿No vió esa nota?

R.—No, señor.

P.—¿Ni el Juez Cordovés le requirió para que entregara a las escrituras o el tomo que faltaba?

R.—No lo he visto, solamente cuando los sellos.

P.—¿En su casa usted no tiene ningún protocolo?

R.—Creo que no.

P.—Pero, compañero, ¿usted no recuerda específicamente si en vez de 3 eran 4 los tomos en 1935?

R.—No recuerdo, si digo que sí, no dijera la verdad con toda seguridad, y, si digo que no, también.

P.—Y, ¿no puede asegurarme si las escrituras correspondientes a del 16 de agosto de 1935 hasta diciembre de ese mismo año le fueron entregadas al Juez Cordovés Arana para su inspección?

R.—No puedo asegurarle eso.

P.—¿Ni sabe actualmente dónde se encuentran?

R.—No sé actualmente.''

terminarse su contenido y, por tanto, no podría expedirse copias de ellas. El querellado se limitó a declarar que dicha destrucción se debió a la acción de la lluvia y de la polilla.

En el sexto cargo se alega que en seis escrituras, otorgadas ante el querellado en los años 1935, 1940, 1941, 1942 y 1945, no aparecen las firmas de algunos de los otorgantes y en el noveno que en 119 escrituras otorgadas durante los años de 1939 a 1945, permitió que quedaran sin estampar huellas digitales e iniciales de los otorgantes en los folios de dichas escrituras. La única explicación que da el querellado en su declaración es que estos hechos se debieron a olvidos, o a que las partes no comparecieron. Estos cargos han quedado probados y envuelven violaciones a las secciones 9 y 14 de la Ley Notarial, según enmendada esta última por la Ley núm. 7 de 23 de marzo de 1937 (Leyes de 1936–37, pág. 135). En cuanto al efecto legal de estas violaciones la sección 20 de la Ley Notarial dispone que serán nulos los instrumentos públicos "... En que no aparezcan las firmas de las partes y testigos cuando deban hacerlo ...." Y en *Rosario* v. *Registrador,* 59 D.P.R. 428, 432, hemos resuelto que "el requisito legal de estampar las huellas digitales es de importancia suma ya que de ese modo, en lo que a otorgantes que no puedan o no sepan firmar se refiere, ha logrado el legislador dotar al instrumento público de un sello de incontrovertible autenticidad, con arreglo a los últimos dictados de la ciencia. De hecho, la huella digital sustituye con éxito a la firma." Resolvimos además que la escritura en que faltan las huellas digitales es nula, aun cuando el contrato en sí no lo sea, si concurren en él los requisitos enumerados en el artículo 1213 del Código Civil.

En los cargos séptimo y décimoprimero se alega que en 22 y 11 escrituras el querellado expresó las fechas y las medidas de las fincas en guarismos, respectivamente. El querellado aceptó estos hechos.

El octavo cargo es el que se refiere a los sellos de rentas internas dejados de adherir y cancelar por el querellado en un gran número de escrituras. Aceptamos la explicación del querellado de que esto se debió a errores suyos al calcular la cuantía de los sellos a cancelar en dichas escrituras, más bien que a mala fe o a un designio de defraudar al erario público. En su mayoría, la cuantía del sello dejado de cancelar era de veinticinco centavos y todos ellos fueron adheridos y cancelados por el Archivero General al serles entregados los sellos por el querellado.

El décimo cargo alega que el querellado efectuó enmiendas en veintiocho escrituras otorgadas ante él durante los años 1941 a 1944 sin hacer salvedad alguna al final de dichas escrituras. El querellado admitió estos hechos. Esto constituyó una violación a la sección 13 de la Ley Notarial.

Por último, en el cargo décimosegundo, se especifican distintas deficiencias e irregularidades en que incurrió el querellado, tales como faltar las firmas de testigos, omisión de especificar quiénes eran los testigos, hacerse constar el nombre de un testigo y aparecer firmando persona de distinto nombre, omisión del nombre de la esposa de un otorgante y otras más. El querellado admitió o no dió explicación alguna sobre estas irregularidades.

Los hechos expuestos en la querella han sido probados, bien por admisiones del querellado o por no haber éste dado explicación alguna satisfactoria sobre los mismos. Ellos demuestran, no una falta de cuidado, sino una negligencia crasa por parte del querellado en el desempeño de sus funciones como notario público.

Tomando en consideración la actitud asumida por el querellado aceptando francamente las irregularidades cometidas por él en el desempeño de sus funciones como notario público, y haberse puesto desde que fué notificado de la querella a la disposición del Tribunal para cumplir y acatar

la resolución que se dictara, sin la celebración de vista, procede suspender al querellado del ejercicio de la profesión de abogado notario por un término de dos años.

*Se dictará sentencia al efecto.*

El Juez Asociado Sr. De Jesús no intervino.