TS-5674                                                                    1

En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| In Re:<br><br>Lcdo. Barney H. López Toro | Expediente Personal<br><br>98TSPR133 |

Número del Caso: TS-5674

Abogada de la Parte Peticionaria:          Lcda. Carmen H. Carlo
                                           Directora de la Oficina
                                           de Inspección de Notarías

Abogado del Lcdo. Barney H. López Toro: Por Derecho Propio

Fecha: 10/14/1998

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correciones del
proceso de compilación y publicación oficial de las
decisiones del Tribunal. Su distribución electrónica se hace
como un servicio público a la comunidad.

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

In re Barney H. López Toro        TS-5674

Opinión del Tribunal emitida por la Juez Asociada señora Naveira de Rodón

San Juan, Puerto Rico, a 14 de octubre de 1998

El pasado 2 de octubre de 1996, la Oficina de Inspección de Notarías sometió a nuestra consideración un informe sobre el estado de los protocolos de 1991 y 1992 del Lcdo. Barney H. López Toro. En dichos protocolos se encontraron las siguientes deficiencias:

Protocolo de 1991

Esc. #10 – Testamento – El notario no especificó que los testigos conocen al testador.

Protocolo de 1992

Esc. #2 – Compraventa – Los vendedores no saben firmar, comparece un testigo de marca y firma, pero los vendedores no fijan sus huellas y ponen una cruz.

El 25 de octubre de 1996, mediante una resolución, le concedimos al licenciado López Toro un término para corregir las deficiencias señaladas por la Inspectora de Protocolos. También le indicamos que debía comparecer y mostrar causa por la cual no debíamos ejercer nuestra función disciplinaria y sancionarlo por las serias deficiencias encontradas en su obra. Luego de varios trámites y solicitudes de prórroga, el licenciado López Toro compareció. Mediante una resolución de 24 de octubre de 1997, le ordenamos a la Lcda. Carmen H. Carlos, Directora de la Oficina de Inspección de Notarías, que expusiera su posición. La licenciada Carlos ha cumplido con nuestra orden, por lo que estamos en posición de resolver.

I

Antes de entrar a discutir los méritos del caso, procede que, aunque someramente, expongamos los hechos que dieron lugar a los señalamientos que hiciera la Oficina de Inspección de Notarías.

El 30 de mayo de 1991, la Sra. Augusta Orenstein otorgó ante el licenciado López Toro la Escritura Núm. 10, sobre revocación parcial de un testamento abierto anterior que había otorgado ante el mismo notario el 27 de abril de 1978 mediante la Escritura Núm. 3. La revocación se refería específicamente a la designación del administrador del caudal hereditario. Al otorgamiento de la Escritura Núm. 10 comparecieron tres personas como testigos instrumentales. En lo pertinente, dicha escritura establece que:

> I [the notary] CERTIFY, to knowing to appearer (testator) [sic], whose personal circumstances are known to me, assuring me that she has, and in my judgment and that of the instrumental witnesses, she does have the necessary legal capacity to make, to revoke, and to modify a Will; and there being not involved herein any act of violence, deceit, fraud, nor any other ground of nullity, the Testator orders her Will in the Following manner:
>
> ....
>
> Present in this Act, the Testator Augusta Orenstein, and the instrumental witnesses, Carmen Vega Hern[á]ndez, Mar[í]a Luisa Alancastro Rivera, [and] Ivonne Rodríguez Ferrer.

> I, The Notary, proceed to read this testament in a loud and audible voice, and advice the Testator and the witnesses to read it by themselves, advising them of the right they have to do so.

> ....

> Of knowing the Testator, her profession and vecinity [sic] and having all the legal formalities taken place in a single act without interruptions of all the contents of this public document, I, The Notary, Attest (Doy Fe), and Sign, Signum, Rubricate and stamp my Seal....

**Como se puede apreciar, en esta escritura el notario autorizante no hizo constar que los testigos instrumentales conocen, ven y entienden a la testadora.[1]**

En cuanto a la segunda deficiencia señalada, el licenciado López Toro autorizó la Escritura Núm. 2 de 26 de febrero de 1992, sobre compraventa. En ésta, comparecieron los esposos Juan Bautista Santiago Ortiz e Isabel Marrero Santiago para venderle a los esposos Angel A. Collazo Ramos y Rosa García González una casa sita en el sector Vietnam, Barriada Sabana del Barrio Pueblo Viejo de Guaynabo.[2] Además, comparecieron el Sr. Tomás Escobar Noble y la Sra. Rosa E. Mercado López como testigos, ya que los vendedores no sabían firmar. A pesar de esto, no se fijaron las huellas digitales de los vendedores en ninguna parte de la escritura y no se expresó que hubiera unidad de acto. En su escrito de mostrar causa, el licenciado López Toro aceptó haber cometido este error. Para subsanarlo, autorizó la Escritura Núm. 7 de 12 de febrero de 1997, sobre ratificación de escritura de compraventa.

Procederemos a analizar cada uno de los señalamientos hechos por la Oficina de Inspección de Notarías, para determinar si el licenciado López Toro incumplió con su función notarial y con la fe pública depositada en él.

II

Alega el licenciado López Toro que el Art. 634 del Código Civil, 31 L.P.R.A. sec. 2150, no le impone al notario autorizante la

---

[1] La señora Orenstein falleció sin otorgar ningún testamento posterior.

[2] Dicha casa está localizada en un solar propiedad del Estado Libre Asociado de Puerto Rico.

obligación de consignar en el testamento que los testigos instrumentales conocen al testador.[3] Indica que esta obligación surge cuando los testigos no conocen al testador. Por su parte, la Directora de la Oficina de Inspección de Notarías señala que la jurisprudencia no ha sido clara en cuanto a si el hecho de consignar en el testamento que los testigos instrumentales conocen, ven y entienden al testador es una formalidad de fondo o una solemnidad externa, Paz v. Fernández, 76 D.P.R. 742, 752-53 (1954), o meramente un deber notarial de cumplimiento estricto, Bardeguez v. El Registrador, 27 D.P.R. 214, 215-16 (1919). Para poder resolver esta controversia, es necesario que estudiemos con detenimiento nuestros pronunciamientos anteriores con relación a este asunto.

En Ríos v. El Registrador de la Propiedad, 15 D.P.R. 665 (1909), tuvimos ante nos la situación de una nota denegatoria del Registrador de la Propiedad de Caguas, donde éste exponía que el notario autorizante de cierto testamento abierto no había hecho constar que los testigos eran mayores de edad, por lo que se podría invalidar el mismo. Determinamos que, según surgía del testamento, el notario había consignado que "los testigos eran vecinos de la ciudad de Caguas, sin excepción legal, y personas todas que conocían [a] la testadora". Ríos v. El Registrador de la Propiedad, supra, págs. 667-68. Además, el notario dio fe de su conocimiento de dichos testigos. Resolvimos que la frase "sin excepción legal", por su propia definición, significaba que los testigos no poseían ninguna de las incapacidades establecidas en el Código Civil. Es decir, prima facie resultaba que los testigos

---

[3] Este artículo dispone lo siguiente:

> El notario y dos de los testigos que autoricen el testamento deberán conocer al testador, y si no lo conocieren, se identificará su persona con dos testigos que le conozcan y sean conocidos del mismo notario y de los testigos instrumentales. También procurarán el notario y los testigos asegurarse de que, a su juicio, tiene el testador la capacidad legal necesaria para testar.
>
> ....

instrumentales eran mayores de edad. Consignamos, sin embargo, que si los testigos en realidad no eran idóneos, las incapacidades de que sufrían deberían alegarse y probarse en el juicio correspondiente instado por aquella parte que tuviera interés.

El caso más importante para resolver la controversia ante nos es Bardeguez v. El Registrador, supra. Según los hechos del mismo, en el testamento otorgado por la causante, el notario hizo constar lo siguiente:

> En tal forma la otorgante doña Ceferina Aparicio Plas expresa su voluntad a presencia de los testigos presentes y vecinos, mayores de edad que conozco personalmente que ven y entienden a la testadora que manifiesta conocerlos personalmente y que convienen conmigo el notario en el juicio favorable que nos merece su capacidad legal para este acto.... Bardeguez v. El Registrador, supra, pág. 214.

Además, el notario expresó que se había cumplido con todos los requisitos del Código Civil y, al final, procedió a dar fe de todo lo que se consignaba en el testamento. El Registrador de la Propiedad de Guayama se negó a inscribir porque de éste no constaba que los testigos instrumentales conocían a la testadora. Resolvimos que esta deficiencia no es de tal naturaleza que necesariamente haga que el testamento sea nulo a priori. Añadimos que esta falta pierde su virtualidad si los interesados aceptan el testamento y lo respetan como si cumpliera con todos los requisitos legales, ya que solamente le incumbe a los interesados cuestionar su validez.[4] A pesar de esto,

---

[4] Con relación a este respecto, señalan Diez-Picaso y Gullón que la legitimación activa para llevar la acción de nulidad de un testamento la tienen todos los interesados. Por otro lado, carecen de legitimación para instar una acción de nulidad por defectos de forma (no por formalidades de fondo) los que "han prestado o traen causa de quien prestó su conformidad a sus disposiciones o las han ejecutado (S. de 26 de noviembre de 1901, 28 de febrero de 1908, 15 de marzo de 1951). Se trata de una renuncia a la acción de nulidad por vicios formales, derivada de una excepcional confirmación de la nulidad, que exige el conocimiento previo de la irregularidad". (Énfasis en el original.) IV Luis Diez-Picaso y Antonio Gullón, Sistema de derecho civil 447 (5ta. ed. 1989).

Por su parte, Puig Brutau indica, siguiendo a Puig Peña, que "la jurisprudencia de[l] ... Tribunal Supremo [español] ha sentado el principio general de que en materia de sucesiones los actos que tácita o expresamente impliquen, por parte del heredero o legatario, el

establecimos que "si bien el notario <u>debe</u>, <u>en el cumplimiento estricto de su deber</u>, consignar en el testamento quiénes de los testigos instrumentales conocen al testador, tal omisión puede entenderse suplida por la constancia del notario, en términos generales, de dar fe de haber llenado todas las formalidades legales". <u>Bardeguez</u> v. <u>El Registrador</u>, supra, págs. 215-16. Por esta razón, revocamos al Registrador en cuanto a este respecto.

En <u>Morales</u> v. <u>Registrador</u>, 35 D.P.R. 905 (1926), el Registrador denegó la inscripción de una escritura de partición de herencia porque supuestamente el testamento que daba lugar a la misma poseía un vicio de nulidad, ya que el notario autorizante no consignó que los testigos instrumentales constataron la capacidad que tenía el testador para testar. Al final del testamento, el notario había hecho constar que los testigos instrumentales "ven, conocen, oyen y entienden al testador.... De todo lo cual, así como de conocer los mencionados testigos, y de haberse cumplido todas las prescripciones del Código Civil vigente respecto a los testamentos abiertos", el notario dio fe. Íd., pág. 907. Resolvimos que esta omisión no vicia de nulidad al testamento, ya que la ley no exige que esto sea consignado expresamente. Por eso es suficiente que el notario dé fe al final del documento de haberse observado todas las formalidades exigidas por la ley.

Un poco más de dos décadas después resolvimos <u>Pacheco</u> v. <u>Sucn. Pacheco</u>, 66 D.P.R. 796 (1947). En este caso, el notario autorizante no hizo constar la hora en que se otorgó un testamento abierto. Se planteó si esto lo hacía nulo. Resolvimos que las formalidades que se

---

reconocimiento de la voluntad del testador, convalidan cuantos defectos <u>puramente formales</u> hayan podido cometerse en su extensión". (Énfasis nuestro) V, II José Puig Brutau, <u>Fundamentos de derecho civil</u> 189 (1977). A pesar de esto, afirma que no necesariamente el testamento queda convalidado, sino que la parte que se ha aprovechado del mismo no puede pedir su nulidad. Íd., pág. 192. Por esta razón, un testamento nulo puede producir efectos mientras no se anule. Íd., pág. 194. De igual forma se expresa Castán. A estos efectos, véase: José Castán Tobeñas, <u>Derecho civil español, común y foral</u> 448-453 (1979).

exigen en el otorgamiento de un testamento son las expresadas en el Art. 645 del Código Civil, 31 L.P.R.A. sec. 2182.[5]  Establecimos que existe:

> una clara distinción entre las omisiones que pueden ser subsanadas y aquéllas que por no serlo producen inevitablemente la nulidad del testamento.  Si lo omitido por el notario es algo que la ley no exige que se consigne expresamente en el testamento, bastará que el notario dé fe de haberse observado "todas las prescripciones exigidas por el Código Civil vigente respecto a los testamentos abiertos".  Por eso se resolvió ... que el no expresarse en un testamento que los testigos conocían a la testadora no convierte el testamento en una mera nulidad y que tampoco es nulo el testamento cuando el notario ha dejado de consignar expresamente en el mismo que los testigos procuraron asegurarse de que a su juicio el testador tenía la capacidad legal necesaria para testar.  Empero, cuando el Código ordena que se haga constar expresamente algún requisito en el testamento mismo, la omisión de ese requisito es fatal para la validez del acto y no puede ser subsanada por la certificación de haberse observado todas las prescripciones legales. Pacheco v. Sucn. Pacheco, supra, págs. 801-802.

Tres años después, en Cintrón v. Cintrón, 70 D.P.R. 771 (1950), entramos a resolver si un testamento es nulo cuando el notario autorizante no dio fe de haberse cumplido las distintas formalidades que prescribe la ley para los testamentos abiertos.  Específicamente, se argumentó que el notario no había consignado que por lo menos uno de los testigos sabía y podía leer y escribir.  Resolvimos que no era

---

[5] Este artículo dispone lo siguiente:

> El testador expresará su última voluntad al notario y a los testigos.  Redactado el testamento con arreglo a ella y con expresión del lugar, año, mes, día y hora de su otorgamiento, se leerá en alta voz, para que el testador manifieste si está conforme con su voluntad.  Tanto el testador como los testigos podrán leer por sí mismos el testamento, debiendo el notario advertirles de éste su derecho.
>
> Si el testador y los testigos estuviesen conformes, será firmado en el acto el testamento por uno y por otros que puedan hacerlo.
>
> Si el testador declara que no sabe o que no puede firmar, lo hará por él y a su ruego, uno de los testigos instrumentales u otra persona, dando fe de ello el notario.  Lo mismo se hará cuando alguno de los testigos no pueda firmar.
>
> El notario hará siempre constar que, a su juicio, se halla el testador con la capacidad legal necesaria para otorgar testamento.

necesario que el notario diera fe de que por lo menos un testigo pudiera y supiera leer y firmar, ya que esta disposición se utiliza cuando el testador o alguno de los testigos no sepa o pueda firmar, cosa que no ocurría en este caso.

Asimismo, analizamos la forma en que el Tribunal Supremo español se había enfrentado a situaciones donde el notario no ha consignado al final del testamento que se cumplieron todas las formalidades exigidas por la ley. Dijimos que dicho Tribunal ha seguido una vertiente menos rigurosa, buscando que se cumpla la intención del testador. Establecimos que todo notario debe consignar esa cláusula general al final del testamento para evitar "el menor motivo de impugnación". Cintrón v. Cintrón, supra, pág. 781. A pesar de esto, dijimos que el Art. 649 del Código Civil, 31 L.P.R.A. sec. 2186, no exige que se utilice una fórmula sacramental para expresar que se ha cumplido con todas las formalidades.[6] Concluimos, según se desprendía del testamento en este caso, que se había cumplido con cada una de ellas y por lo tanto no anulamos el testamento.

En Paz v. Fernández, 76 D.P.R. 742 (1954), se pretendía declarar nulo un testamento porque supuestamente no se habían cumplido ciertas solemnidades. En lo que aquí respecta, se alegó que el notario no había consignado que a su juicio los testigos instrumentales no estaban comprendidos entre las prohibiciones que establece el Código Civil. La cláusula del testamento que se refería a los testigos es la siguiente:

> Así lo dijo y otorgó a mi presencia y a la de los testigos instrumentales..., mayores de edad, vecinos de esta ciudad capital donde se verifica el otorgamiento, los que conocen, entienden y ven al testador. Y leída por mi en alta voz esta escritura, y la ratifica y firma el testador con los testigos instrumentales. Del conocimiento de tales testigos y de haberse cumplido todas las formalidades prescritas por

---

[6] Este artículo dispone que "[t]odas las formalidades expresadas ... se practicarán en un solo acto, sin que sea lícita ninguna interrupción, salvo la que pueda ser motivada por algún accidente pasajero. El notario dará fe, al final del testamento, de haberse cumplido todas las dichas formalidades y de conocer al testador o a los testigos de conocimiento en su caso".

[la ley] ..., yo, el notario DOY FE.   (Énfasis en el original.) <u>Paz</u> v. <u>Fernández</u>, supra, pág. 746.

Resolvimos que los testigos que autorizan el testamento deben ser idóneos, esto es, (1) que no posean ninguna de las causas de incapacidad enumeradas en el Código Civil, (2) que vean y entiendan al testador y (3) que por los menos uno sepa y pueda leer y escribir.[7] Añadimos que:

> [n]o existe disposición alguna en el Código Civil que exija del notario autorizante de un testamento abierto que haga constar en el mismo que los testigos instrumentales no están comprendidos entre las prohibiciones que para servir como tales señala el propio Código.  Según hemos señalado, <u>sólo se requiere que sean tres testigos idóneos, que vean y entiendan al testador, y que uno de los tres por lo menos, sepa y pueda escribir</u>.  No exist[e] precepto de ley positiva alguno que exija el cumplimiento, so pena de nulidad, del vicio atribu[i]do al testamento en este señalamiento de error....  [N]o todas las omisiones en que pueda incurrir un notario al otorgar una escritura de testamento necesariamente vicia de nulidad el mismo.
>
> La omisión en el caso de autos no vicia de nulidad el otorgamiento del testamento, ya que substancialmente se cumplió con la exigencia que establece el Código Civil en el art. 644, al concurrir en dicho otorgamiento tres testigos idóneos –su idoneidad nunca fue impugnada– que conocían, veían y entendían al testador y de lo cual di[o] fe el notario, así como di[o] fe de haberse cumplido todas las formalidades prescritas para tales actos, según requeridas por el Código Civil.  (Citas omitidas.)  (Énfasis suplido.)  <u>Paz</u> v. <u>Fernández</u>, supra, págs. 747-48.

También señalamos que el notario no viene obligado a utilizar las mismas palabras que expresa el Código Civil.  Puede utilizar otras que tengan el mismo significado o expresen la misma idea.  Asimismo, establecimos que las formalidades supuestamente incumplidas en ese caso:

> no eran de las esenciales que la ley exige que aparezcan consignadas en la escritura de testamento, o sea, no eran de las formalidades <u>de fondo</u> que, al quedar incumplidas, producen "ab initio" la nulidad del testamento, a distinción de las solemnidades externas o de forma, ..., la apreciación de las cuales, en cuanto a si se han observado o no, y sus consecuencias, ha de determinar el tribunal, ya que, "en

---

[7] La doctrina también enumera estos requisitos.  A este respecto, véanse: VI, II José Castán Tobeñas, <u>Derecho civil español, común y foral: Derecho de sucesiones</u> 90 (1979); IV, III José Ramón Vélez Torres, <u>Curso de derecho civil: Derecho de Sucesiones</u> 71-72 (1992); V Manuel Albaladejo García, <u>Curso de derecho civil: Derecho de sucesiones</u> 214 (1981); Efraín González Tejera, <u>Derecho sucesorio puertorriqueño</u> 154 (1983).

principio, no deben ser más ni menos que las precisas para hacer auténtica, segura y permanente la última voluntad."... El criterio que debe regir para tales determinaciones "no da igual valor a todas las solemnidades del testamento ni admite que la falta de cualquiera de ellas, lleve siempre aneja la sanción de nulidad del acto. Si bien a tenor del art. 687 del Código Civil Español –dice la sentencia de 30 de abril de 1909– será nulo el testamento en cuyo otorgamiento no se hayan observado las formalidades respectivamente establecidas, se impone, según regla de buen criterio, dada la naturaleza y significación de aquél, tener en cuenta la índole de dichas formalidades para apreciar, con relación a su trascendencia, el límite dentro del que pueden conceptuarse cumplidas, armonizando así la voluntad conocida de un testador con los requisitos externos de su expresión." (Citas omitidas.) (Énfasis en el original.) Paz v. Fernández, supra, págs. 752-53.

Por otro lado, en Rivera Pitre v. Galarza Martínez, 108 D.P.R. 565 (1979), interpretamos la disposición del Código Civil que requiere que los testigos instrumentales "tengan calidad de vecinos o domiciliados en el lugar del otorgamiento". Art. 630 del Código Civil, 31 L.P.R.A. sec. 2146. Resolvimos que, según la realidad contemporánea de Puerto Rico, testigo puede ser cualquier persona que resida en la Isla y conozca realmente al testador. Consignamos que la participación de testigos idóneos es una formalidad esencial o de solemnidad para la validez del testamento. Rivera Pitre v. Galarza Martínez, supra, pág. 570.

Como se puede apreciar, la jurisprudencia reseñada es algo ambivalente en cuanto al deber del notario con respecto al incumplimiento de las solemnidades en los testamentos. Así, en Bardeguez v. El Registrador, supra, señalamos que el no hacer constar que los testigos conocían al testador no es una falta que haga que el testamento sea nulo. Además, indicamos que si las partes interesadas aceptan el testamento y lo respetan, no pueden luego pedir su nulidad. Sin embargo, señalamos que era un deber de cumplimiento estricto del notario el consignar que los testigos instrumentales conocen al testador. De no hacerlo, el notario estaría abriendo la puerta para que las partes interesadas entraran en un litigio que cuestione la validez del testamento. Debemos destacar que tanto en Bardaguez v. El Registrador, supra, como en Morales v. Registrador, supra, recurrimos a la dación de fe general que constaba al final del testamento para

sostener su validez. Por otro lado, en Pacheco v. Sucn. Pacheco, supra, diferenciamos qué tipos de formalidades son las que deben constar en el testamento. Además, resolvimos que si éstas no se consignaban expresamente, el testamento sería nulo. Reiteramos que si la ley no exige que se consignen determinadas solemnidades, entonces basta con que se dé fe, al final del testamento de una forma general, de que se ha cumplido con lo exigido por la ley.

Por otro lado, en Paz v. Fernández, supra, establecimos una distinción entre las solemnidades de fondo y las de forma, en cuanto a que si se incumplen con las primeras el testamento es nulo ab initio, mientras que de las externas o de forma le compete al tribunal determinar si se ha incumplido con las mismas y cuáles son sus consecuencias. Tanto en Paz v. Fernández, supra, como en Rivera Pitre v. Galarza Martínez, supra, señalamos que, para que un testigo sea idóneo, tiene que conocer realmente al testador.

Según el desarrollo jurisprudencial esbozado anteriormente, el enfoque seguido por este Tribunal ha sido menos riguroso y más pragmático al determinar si se han incumplido o no las formalidades en los testamentos. Tenemos que concluir que, según nuestra jurisprudencia, nunca hemos exigido que se haga constar que los testigos conocen, ven y entienden al testador. A pesar de esto, tampoco hemos sido claros en cuanto a cuál es la responsabilidad del notario cuando omite esta declaración.

Para aclarar este punto, debemos entrar a estudiar más detenidamente cuál es el papel de los testigos instrumentales en el acto de testar, según la ley y la doctrina.

III

El Art. 644 del Código Civil, 31 L.P.R.A. sec. 2181, dispone que "[e]l testamento abierto deberá ser otorgado ante notario y tres testigos idóneos que vean y entiendan al testador, y de los cuales uno,

a lo menos, sepa y pueda leer y escribir". (Énfasis nuestro.) El profesor González Tejera señala que los testigos son un elemento esencial para la eficacia de los testamentos. Esto es así, ya que se asegura la autenticidad del negocio jurídico, además de establecerse, de ser necesario, la idoneidad del acto si el mismo es impugnado. Por esta razón es importante que los testigos vean y entiendan al testador, ya que "su participación es activa y determinante en la eficacia del testamento. [Escolio omitido.] ... [L]os testigos deben estar presentes y conscientes de todo cuanto acontece durante la unidad de acto, por lo que deben participar durante todo el mismo". Efraín González Tejera, Derecho sucesorio puertorriqueño 74 (1983). Además, indica que los testigos y el notario deben conocer al testador para que nadie se haga pasar por éste y otorgue el testamento. Los testigos instrumentales son importantes para comprobar que el testador efectivamente es quien dice ser. Íd., pág. 87. Por último, señala que el requisito de los tres testigos idóneos tiene el carácter de una solemnidad.[8] Íd., pág. 154.

Por su parte, Castán expresa que se consideran solemnidades generales de los testamentos la intervención de testigos y la identificación del testador. VI, II José Castán Tobeñas, Derecho civil español, común y foral: Derecho de sucesiones 51 (1979). Asimismo señala que la comparecencia de testigos al acto de testar "tiene el carácter de un requisito esencial de forma o de solemnidad (no simplemente de prueba) que afecta la validez del acto". (Énfasis en el original.) Íd., pág. 52.[9]

---

[8] En igual sentido se expresan Lacruz Berdejo y Sancho Rebullida. Véase: José Luis Lacruz Berdejo y Francisco de Asís Sancho Rebullida, Derecho de sucesiones 214 (1981).

[9] A pesar de esto, Castán indica, siguiendo a Sánchez Román, que el requisito de que los testigos conozcan al testador envuelve una desconfianza o desconsideración hacia la figura del notario, ya que debe bastar la autorización notarial para garantizar la autenticidad del testamento, además de que dicho conocimiento no evitaría la mala fe del otorgante porque éste podría ponerse de acuerdo con los testigos. Castán Tobeñas, supra, págs. 63-64.

Por otro lado, Puig Brutau señala que los testigos deben ser personas que presencien el acto de testar, ya que su intervención tiene el carácter de una solemnidad. Además, tienen el deber de identificar al testador y apreciar su capacidad al momento del otorgamiento. V, II José Puig Brutau, Fundamentos de derecho civil 52 (1977). Asimismo, sostiene que el no identificar debidamente al testador puede abrir la puerta a que alguien dispusiera del patrimonio ajeno, cuando el verdadero titular no puede ya hacer nada porque ha fallecido. Íd., pág. 65. Como parte de los requisitos subjetivos que debe contener un testamento, señala que tanto el notario autorizante como los testigos tienen que ver y entender al testador. Íd., pág. 70.[10]

Con relación a la función de los testigos, Manresa ha expresado que "el Código ..., ha procurado rodear el testamento de todas las garantías posibles para asegurar la verdad de sus disposiciones y la autenticidad del acto, alejando a la vez todo peligro de falsedad. Por eso ..., exige que los testigos instrumentales, cuando menos en número de dos, conozcan al testador, y todos ellos procuren enterarse de que, a su juicio, tiene la capacidad legal necesaria para testar". V José María Manresa y Navarro, Comentarios al Código Civil español 661-62 (1972).

De lo expuesto anteriormente se puede colegir que los testigos instrumentales desempeñan un papel importantísimo en el otorgamiento de un testamento. Ellos deben asegurarse de que el testador es quien dice ser, además de atestiguar sobre la capacidad del mismo. Según la doctrina, el que concurran testigos idóneos es una solemnidad de fondo, sin la cual el testamento sería nulo.

Debemos destacar que el Código Civil exige que se cumplan con los distintos requisitos de los testamentos porque éstos surten efecto una vez el otorgante ha muerto. Para salvaguardar la validez y la confianza depositada en esta expresión de última voluntad, es que el Código sanciona con pena de nulidad el testamento que no cumpla con las

---

[10] De igual manera se expresan Diez-Picaso y Gullón. Véase: IV Luis Diez-Picaso y Antonio Gullón, Sistema de derecho civil 362-64 (1989).

solemnidades correspondientes. Art. 636 del Código Civil, 31 L.P.R.A. sec. 2152.[11]

Por esto, en Paz v. Fernández, supra, establecimos que era importante cumplir con los requisitos formales. Sin embargo, según señalamos anteriormente, los tribunales tienen reservada la facultad de atemperar el rigor de dichos requisitos. Así, indicamos que "la apreciación de si en un testamento se han cumplido o no las formalidades legales es materia que incumbe a los tribunales, ..., ya que el cumplimiento de aquéllas es cuestión de hecho que compete al tribunal, en su apreciación, determinar, antes de que pueda declarar nula una disposición testamentaria en la cual aparezca expresada clara y terminantemente la voluntad del testador". (Énfasis en el original.) Paz v. Fernández, supra, pág. 752. A fin de cuentas hemos establecido, siguiendo a Manresa, que:

'[p]ara evitar el fraude y prevenir la mala fe, todas las legislaciones han establecido determinadas solemnidades o requisitos para el otorgamiento de los testamentos, que a la vez que sirvan de garantía contra las falsedades y simulaciones, constituyen una prueba de su verdad en las manifestaciones de la última voluntad; y tal importancia tiene la observancia de dichas solemnidades o requisitos, que de ellas depende la validez o nulidad de las disposiciones testamentarias.

Todo el problema jurídico relativo a la forma de los testamentos consiste en la acertada elección de aquellos requisitos, que haciendo imposible o cuando menos difícil la falsificación de la voluntad del testador, no disminuyan ni coarten la libertad en el ejercicio de la testamentifacción activa; y el Código, inspirándose en ese criterio, ha procurado establecer los más eficaces para asegurar la verdad y la autenticidad del testamento, y para facilitar, además, la expresión de las últimas voluntades.

Estas solemnidades o requisitos han variado y deben variar según las circunstancias de tiempo y de lugar....' Manresa, Comentarios al Código Civil Español, Tomo 5, 606–607 (1972). (Énfasis nuestro.) Rivera Pitre v. Galarza Martínez, supra, págs. 567–68.

Una vez analizados nuestros pronunciamientos y los de la doctrina, resolvemos que, según estableciéramos en Bardeguez v. El Registrador,

---

[11] Este artículo dispone que "[s]erá nulo el testamento en cuyo otorgamiento no se hayan observado las formalidades respectivamente establecidas en este Capítulo".

supra, el notario tiene que hacer constar en todo testamento que autorice que los testigos instrumentales conocen, ven y entienden al testador.[12] Esta obligación es de cumplimiento estricto y está sujeta a la responsabilidad en que pueda incurrir el notario y a nuestra función sancionadora. A pesar de esto, debemos señalar que la omisión del notario de no hacer constar que los testigos instrumentales conocen, ven y entienden al testador constituirá una solemnidad de forma que no habrá de acarrear automáticamente la nulidad del testamento. Es decir, si el notario no hace constar que los testigos instrumentales conocen, ven y entienden al testador, incurrirá en violaciones a su deber notarial y a la fe pública depositada en él, ya que esta circunstancia puede dar lugar a que se inicien pleitos innecesarios impugnando la validez del testamento. Asimismo, el notario que no cumpla con esta norma estará sujeto a sanciones de este Tribunal. Aclaramos, sin embargo, que este dictamen será prospectivo. Por esta razón, no lo aplicaremos al caso de autos, por lo que el licenciado López Toro no será sancionado en esta ocasión por haber cometido esta falta.

Procede que analicemos la segunda falta imputada al licenciado López Toro.

IV

Alega la Directora de la Oficina de Inspección de Notarías que la Escritura Núm. 7 de 12 de febrero de 1997, con la que el licenciado López Toro presuntamente subsanó los errores cometidos en la escritura de compraventa, no tiene efecto jurídico alguno. Le asiste la razón. Veamos.

La Ley Notarial, Ley Núm. 75 de 2 de julio de 1987, en su Art. 25, 4 L.P.R.A. sec. 2043, en lo pertinente dispone que "[s]iempre que cualesquiera de los otorgantes no sepa o no pueda firmar, el notario exigirá que fijen las huellas digitales de sus dos (2) dedos pulgares. Si no los tuviere, de cualquiera otros, junto a la firma del testigo que

---

[12] Por supuesto, esto lo hará siempre y cuando los testigos en realidad conozcan al testador. Si no lo conocen, se estará a lo dispuesto en el

a ruego de tal o tales firme y al margen de los demás folios de la escritura, lo cual se hará constar por el notario en la escritura...". Por su parte, el Art. 34 de la Ley Notarial, supra, 4 L.P.R.A. sec. 2052, dispone que serán nulos los instrumentos públicos "[e]n que no aparezcan las firmas de las partes y testigos cuando deban hacerlo, y la firma del notario".

En Rosario v. Registrador, 59 D.P.R. 428 (1941), interpretamos las disposiciones análogas a éstas de la Ley Notarial de 8 de marzo de 1906. Resolvimos que cuando uno de los otorgantes no puede o no sabe firmar, es necesario para la validez del documento que éste fije sus huellas digitales en el mismo. Este hecho constituiría la firma de ese otorgante. Asimismo, establecimos que:

> [e]s incuestionable que el requisito legal de estampar las huellas digitales es de importancia suma ya que de ese modo, en lo que a otorgantes que no puedan o no sepan firmar se refiere, ha logrado el legislador dotar al instrumento público de un sello de incontrovertible autenticidad, con arreglo a los últimos dictados de la ciencia. De hecho, la huella digital sustituye con éxito a la firma. (Énfasis nuestro.) Rosario v. Registrador, supra, pág. 432.

Reiteramos esta norma en In re Piñero, 68 D.P.R. 785 (1948), donde señalamos que la escritura en que no se fijen las huellas digitales del otorgante que no sepa o pueda firmar es nula, aunque esto no necesariamente significa que el negocio jurídico envuelto sea nulo. In re Piñero, supra, pág. 790.

En el caso de autos, el licenciado López Toro no observó este requisito de forma. Omitió fijar las huellas digitales de los vendedores al final de la escritura de compraventa y en cada uno de sus folios. Por eso, esta escritura carece de la firma de las partes vendedoras, lo que la hace nula y no meramente anulable. En consecuencia, no se podía convalidar o ratificar la Escritura Núm. 2 de 26 de febrero de 1992 mediante la autorización de la Escritura Núm. 7 de 12 de febrero de 1997, ya que a lo que es nulo, nada puede conferirle eficacia. Para subsanar este error, el licenciado López Toro tendrá que

---

Art. 634 del Código Civil, 31 L.P.R.A. sec. 2150.

autorizar una nueva escritura de compraventa entre las partes otorgantes de la escritura original.[13] Por supuesto, en esta ocasión tendrá que seguir todos los requisitos establecidos en la Ley Notarial para las situaciones en que por lo menos uno de los otorgantes no pueda o sepa firmar.

Por otro lado, señala la Directora de la Oficina de Inspección de Notarías que existen otras deficiencias en la Escritura Núm. 2. Estas son: (1) que el licenciado López Toro no hizo constar que en el otorgamiento se hubiera observado la unidad de acto[14] y (2) que el licenciado López Toro consigna en el último folio de la escritura que las partes renunciaron a tener presentes testigos instrumentales, cuando en realidad comparecieron dos personas en este concepto. Estas son faltas que denotan un descuido extremo de parte del licenciado López Toro en su función notarial al redactar y autorizar instrumentos públicos. "El notario es el <u>profesional del Derecho</u> que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen.... Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, <u>redactar las escrituras y documentos notariales a tal fin y conferirle[s] autoridad a los mismos</u>...". Art. 2 de la Ley Notarial, supra, 4 L.P.R.A. sec. 2002.

V

En vista de que el licenciado López Toro solo cometió la segunda falta señalada, lo cual aceptó, y tomando en cuenta que el intento de subsanación de la misma no ha sido efectivo, se le concede un término de sesenta (60) días para que realice los trámites pertinentes, a su propio

---

[13] Surge del escrito de la Directora de la Oficina de Inspección de Notarías que una de las partes vendedoras ha fallecido. El negocio jurídico recogido en la Escritura Núm. 2 no necesariamente es nulo, aunque la escritura sí lo sea. Para subsanar el error tendrán que comparecer los comparecientes originales que queden vivos y los herederos del occiso para otorgar una nueva escritura de compraventa.

[14] En cuanto a la unidad de acto, la Ley Notarial establece que "[c]uando al otorgamiento comparecieren testigos, habrá unidad de acto,

costo, para subsanarla. Asimismo, debe mantener informado a este Tribunal de dichos trámites. Si por alguna razón, dentro del término concedido, no pudiera corregir el error, deberá comparecer y explicar las gestiones realizadas así como las razones por las cuales no ha cumplido las órdenes de este Tribunal. Posteriormente, este Tribunal se pronunciará en cuanto a cuál será la sanción a imponer, si alguna, al licenciado López Toro. Además, se le apercibe que en el futuro debe ser más cuidadoso en la redacción de los instrumentos públicos que autorice.

Se dictará sentencia de conformidad.


Miriam Naveira de Rodón
Juez Asociada

---

lo que bajo su fe notarial hará constar el notario en la escritura". Art. 24 de la Ley Notarial, supra, 4 L.P.R.A. sec. 2042.

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

In re Barney H. López Toro        TS-5674

SENTENCIA

San Juan, Puerto Rico, a 14 de octubre de 1998

En vista de que el Lcdo. Barney H. López Toro solo cometió la segunda falta señalada, lo cual aceptó, y tomando en cuenta que el intento de subsanación de la misma no ha sido efectivo, se le concede un término de sesenta (60) días desde el archivo en autos de una copia de la notificación de esta Opinión y Sentencia para que realice los trámites pertinentes, a su propio costo, para subsanarla. Asimismo, debe mantener informado a este Tribunal de dichos trámites. Si por alguna razón, dentro del término concedido, no pudiera corregir el error, deberá comparecer y explicar las gestiones realizadas así como las razones por las cuales no ha cumplido las órdenes de este Tribunal. Además, se le apercibe que en el futuro debe ser más cuidadoso en la redacción de los instrumentos públicos que autorice. Una vez el Lcdo. Barney H. López Toro cumpla con nuestra orden, este Tribunal se pronunciará en cuanto a cuál será la sanción a imponérsele, si alguna.

Lo pronunció, manda el Tribunal y certifica la Subsecretaria del Tribunal Supremo.  El Juez Asociado señor Rebollo López concurre con el resultado sin opinión escrita.  El Juez Asociado señor Negrón García disiente con opinión escrita.


Carmen E. Cruz Rivera
Subsecretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Barney H. López Toro                  TS-5674

Opinión Disidente del Juez Asociado señor Negrón García

San Juan, Puerto Rico, a 14 de octubre de 1998

I

Según resuelto en <u>Bardeguez</u> v. <u>El Registrador</u>, 27 D.P.R. 214, 216 (1919), la mayoría hoy reafirma que **un notario tiene que cumplir estrictamente con el deber de consignar en el testamento quiénes, de los testigos instrumentales conocen, ven y entienden al testador.** (Opinión del Tribunal, pág. 19). En virtud de una interpretación de la casuística posterior, nos dice que se trata de una "[o]bligación es de cumplimiento estricto y está sujeta a la responsabilidad en que pueda incurrir el notario y a nuestra función sancionadora." Aún así, decide que "[e]ste dictamen será prospectivo. Por esta razón,

no lo aplicaremos al caso de autos, por lo que el Lcdo. López Toro no será sancionado en esta ocasión por haber cometido esta falta." (Opinión del Tribunal, págs. 19-20).

No cabe duda que, al amparo del Art. 634 del Código Civil,[15] <u>Bardeguez</u> v. <u>El Registrador</u>, <u>supra</u>, estableció claramente esa formalidad notarial. En interacción con el Art. 636 del Código Civil,[16] precisó que su omisión conllevaría la posible **nulidad** del testamento. La falta no "[n]ecesariamente lo convierte en una mera nulidad <u>a priori</u> porque pierde su virtualidad si los interesados aceptan el testamento y convienen en respetarlo...". <u>Bardeguez</u>, <u>supra</u>, 215. **Sin embargo, si una parte con interés lo impugna, el testamento es nulo.**

Precisamente aquí comienza nuestra diferencia con la mayoría; **en la dimensión testamentaria, lo anulable no puede dejarse sólo al criterio laxo** (aunque parezca un contrasentido) **de cumplimiento estricto.**

Disentimos pues de esa conclusión y caracterización mayoritaria, que inintencionalmente menoscaba el mandato del Código Civil.

II

**Finalmente, no se justifica aplicar prospectivamente una norma que existe desde aproximadamente setenta y nueve (79) años.**

Ese curso de acción, injustificadamente exime de toda responsabilidad al notario Barney H. López Toro. Sobretodo, **es un mensaje muy equivocado a la clase togada profesional.** Si algo debe representar la práctica de la abogacía, en particular la Notaría, es el conocimiento y escrupuloso acatamiento de la Ley Notarial y demás leyes especiales que de una u otra forma inciden en su ejercicio.

Rehusamos suscribir un estándar menor que tiene el potencial de generar daños a los herederos testamentarios y menoscaba sustancialmente la fe pública notarial en un área tan sensitiva como son los testamentos. **En la dimensión**

---

[15] 31 L.P.R.A. sec. 2150

[16] 31 L.P.R.A., secs. 2150 y 2152

adjudicativa ética-profesional, nuestro deber es velar por ambas; no debilitarlas.

ANTONIO S. NEGRON GARCIA
Juez Asociado